## STATE *v.* HARRY HAYES.

HOMICIDE—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY—RES GESTÆ
OTHER CRIMES.

1. The fact that the testimony in a criminal case is largely of a
circumstantial character does not necessarily weaken its
strength, if the circumstances are closely clustered together
in one unbroken chain of criminating facts, all pointing with
unerring certainty to the accused as the author of the alleged
crime. Circumstantial evidence may be quite as conclusive as
direct evidence, but it is incumbent upon the prosecution, not
only to show by a preponderance of the evidence that the
alleged facts and circumstances completing the chain are true,
but they must also be such facts and circumstances as are
incompatible, upon any reasonable hypothesis, with the inno-
cence of the accused, and incapable of explanation upon any
reasonable hypothesis other than that of the defendant's guilt.
The chain of circumstances must be complete and unbroken,
and should be established beyond a reasonable doubt.

2. When characterizing the act of the defendant in killing the
deceased, it was proper for the jury to view it in the light of
all the circumstances to which it was subject at the time. It
was proper for the jury to consider the condition of the
weather; the ice upon the lake in February, and its absence in
April; the size of the bullet, and the direction from which it
was shot; whether the bodies were placed under the ice, and
how they came to be found upon the shore of the lake; the
defendant's efforts to prevent search in the places where the
bodies were found, and his condition of mind and manner
when viewing the bodies; what he said and did indicating a
malicious intent, or the absence of it.

3. It was not error in the counsel for the prosecution, in his open-
ing statement to the jury, to inform them that he expected to
show the killing of two other young men besides the one with
whose murder the prisoner was charged, and that all three
met their death at the same time, at the hands of the defend-

ant. While the general rule is that one crime cannot be offered to prove a similar offense committed against another person at another time, yet where the circumstances tend to show the killing of three persons in a similar manner, and at the same time, and their disappearance at the same time, as one continuing transaction, and the state was reasonably bound to account for the whereabouts of the two persons, companions of the deceased (whose death was not charged to defendant), then in such a case the killing of the one, and the manner and killing of each, bore upon the killing of the others, and tended to explain the motive, acts, and intent of the slayer of the deceased. Such evidence is competent, especially when accompanied by instructions from the court that the jury should not consider it except and so far as it tended to connect the defendant with the crime charged.

4. Where there is evidence sufficient to establish the defendant's guilt, it is for the jury to pass upon its weight, and determine whether or not the defendant is guilty beyond a reasonable doubt.

(No. 720. Decided Oct. 12, 1896.)

Appeal from the Fourth district court Utah county. Hon. W. M. McCarty, *Judge.* Defendant was found guilty, on circumstantial evidence, of the murder of Albert Hayes, alias Albert Ernstrom, and was sentenced to be hung. On appeal the judgment of conviction was affirmed. The facts are stated in the opinion.

*J. W. N. Whitecotton, Chas. De Moisey,* and *H. C. Edwards,* for defendant.

*A. C. Bishop,* Attorney General, and *Benner X. Smith (E. A. Wedgewood,* of counsel), for the State.

MINER, J.:

The indictment in this case charges the defendant with the crime of murder in the first degree, in shooting and

killing one Albert Enstrom, alias Albert Hayes, in Utah county, February 16, 1895. The verdict of murder in the first degree, as charged, was rendered April 1, 1896, and the defendant was sentenced to be hanged by the neck until dead. From the judgment of conviction, and the order denying defendant's motion for a new trial, this appeal is taken.

The first contention made by the appellant is that there is no evidence in the case tending to prove that the deceased was killed in Utah county, nor that the defendant killed the deceased in Utah county, and that there was no evidence to justify the verdict. We discover from the record that about the 16th day of February, 1895, the defendant or his wife owned a ranch at Pelican Point, on the west shore of Utah Lake, in Utah county, upon which was erected a small dwelling, where the deceased Albert Hayes, Andrew Johnson, and Alfred Neilson, three young men, resided, and took care of the ranch and the stock for the defendant, who was stepfather to Albert Hayes, and who resided at Eureka, Utah, about 20 miles distant. These young men had been missed from the dwelling after the 17th of February, 1895. Search was made, and about the 15th day of April, 1895, the dead body of Albert Hayes was found in the shoal and sand of Utah Lake, partly covered, about one mile from the Hayes ranch, with two bullet holes in his breast, which caused his death. The bullets were shot from the front. His clothes were on. A few days later the dead bodies of Andrew Johnson and Alfred Neilson were found in the lake, about two miles south from where the body of Hayes was found. Each body had on the clothing worn in life. Johnson had a gunshot wound in the breast, shot from right to left, and Neilson had a gunshot wound through from the back of the head, and out over the right eye. These several wounds caused the death of the three

young men, and were mortal wounds, caused by bullets from a gun. The Hayes ranch and house were shown to be in Utah county, Utah, and the country south of the Hayes ranch was for three or four miles in Utah county. A map was introduced showing the lay of the country and locality of the Hayes ranch and corral. The house was 10 or 15 rods from the road, and about 300 yards from the lake. The deceased and his companions were at the house on the ranch on Saturday, February 16, 1895, during the daytime, and were last seen there at 5 o'clock in the afternoon. Parties passing the house on the 18th and 23d of February found no one there, and the doors were locked. The cattle and hogs were found loose and unattended, and the bedding in the house had been changed. On March 9th, the house was entered, and blood marks were found on the floor in several places. The defendant was shown to have made repeated threats against the deceased and his dead companions, and was shown to have made repeated contradictory statements concerning the affair.

Defendant claimed that he had not been to the ranch in February or March, nor between December, 1894, and April, 1895. It was shown that he had said he was going to the ranch on the 15th of February to shoot ducks, and invited a friend to go with him, and that he had started off alone with a cart that day, and returned on the 17th of February, and stated that he had just returned from below. It also appears from the testimony of two witnesses that defendant was seen by them at the ranch on the 17th day of February, fixing a cart. Several witnesses saw him at the ranch between the 10th and 20th of February. On the 16th or 17th of February, Hayes' wife endeavored to borrow a horse to go to the ranch, stating that the defendant was there, and that she desired to go there. It was shown that defendant started false stories

concerning the deceased having left the ranch, and taking away his property, and also that he had received a letter that the boys had gone to Arizona, which was untrue. When the defendant received letters that the boys were gone, and that the stock was starving, he was asked why he did not go down and look after the stock, to which he replied "that he would never go to the ranch again, for it had been a great deal of trouble to them, and he would never go there again." On his return from the ranch, on the 17th of February, he looked pale, acted peculiar; his eyes were bloodshot; he acted crazy-like and nervous; his conduct was extraordinary and unusual. While wringing a friend's hands, he turned him around, and said, "Shake hands with an old criminal." The testimony tended to establish the theory that the boys were shot at about the same time, and placed under the ice.

A witness testified that he heard a conversation between his brother and Hayes shortly after the homicide, and before the bodies were found, as follows: "My brother said to Hayes that he thought Albert was killed first, and then put through the ice,—an air hole in the ice, —and then, the other boys coming back, they being away, that they were then killed to cover up the first crime. Mr. Hayes said: 'There was no ice on the lake when I was down there in February, or rather when I was there in March.' And my brother says; 'Why, Hayes, there was no ice on the lake in March.' And he says: 'Oh, yes; there was ice on the lake in March.' And my brother says: 'I was at Provo as a witness at that time, and there was no ice on the lake then at that period.' And Mr. Hayes replied: 'There are no air holes in the ice when it is frozen solidly, as it would be in the winter.' My brother spoke up, and said: 'This murder will come out.' And Hayes said: 'It will never be found out, not in a thousand years.' " The

defendant was shown to be opposed to taking any steps to find the bodies or the murderer. He failed to identify the body or clothing of his stepson, although the clothing had been previously worn by himself, while others identified both readily. A wagon or cart track was noticed from the house to the lake on the 18th of February. In February the lake was frozen over, and was thawed out in April. When the bodies were being searched for, the defendant attempted to attract the attention of the searchers away from the locality where the bodies were found, and to discourage the search. The harness that the defendant accused the deceased of taking was found in a manure heap on the premises. In April, Mrs. Hayes informed a witness, in presence of her husband, that her husband had killed her boy, and Hayes made no reply except to inquire of witness what was the best to do, and he was advised to notify the officers. Hayes replied that he wanted to keep it still. He did not want to make any noise or excitement, nor inform the officers, but wanted to get a search warrant, and find the things he had before stated were carried away by the boys, or were lost. Mrs. Hayes also stated, in defendant's presence, that he had talked her out of notifying the officers, because he wanted to find his lost property first. Hayes said the ranch belonged to the deceased, and he would not go near it again. He called the other boys "damned scrubs," and said "they were no good anyway." He had threatened to kill the deceased before the occurrence in question, when in a state of anger.

The testimony is replete with other strong criminating circumstances connecting the defendant with the murder of the three boys at about the same time. There was sufficient evidence to go to the jury to establish the defendant's guilt. That being so, it was for the jury to pass upon it, and say whether or not the defendant was

guilty beyond a reasonable doubt. The testimony was largely of a circumstantial character, but that does not weaken its strength and potency where the circumstances are so closely clustered together in one unbroken chain of criminating facts, all pointing with unerring certainty to the defendant as the author of the alleged crime. Circumstantial evidence may be quite as conclusive as direct evidence, but it is incumbent upon the prosecution, not only to show by a preponderance of evidence that the alleged facts or circumstances completing the chain are true, but they must also be such facts and circumstances as are incompatible, upon any reasonable hypothesis, with the innocence of the accused, and incapable of explanation upon any reasonable hypothesis other than that of the defendant's guilt. The chain of circumstances must be complete and unbroken, and should be established beyond a reasonable doubt. *People* v. *Scott*, 10 Utah 217.

In his opening statement to the jury, counsel for the prosecution stated to the jury what the people expected to prove on the trial of the case and that the circumstances of the whole transaction would show that the killing of the deceased and of Johnson and Neilson occurred at one time, and as one transaction; and that all three of the boys met their death at the hands of the defendant, at about the same time; and that it would be impossible to separate the proof of the killing of Albert Hayes from the killing of the other two young men; and that the prosecution would show the killing of the three as part of one transaction. To this statement defendant's counsel objected, and objected to any other evidence being admitted, except as to the killing of Hayes. The objection was overruled, and an exception taken. Thereupon testimony showing the whole transaction was admitted as a part of the *res gestæ*. The court, in its

instructions to the jury on this subject, said: "There has been some evidence introduced by the prosecution in this case of the killing of Andrew Johnson and Alfred Neilson. You are instructed that you must not consider the testimony on this point, except only so far as it may connect the defendant with the crime charged in the indictment; and, if you find that such testimony fails in any way to connect the defendant with the crime charged in the indictment, it is your duty to wholly and absolutely disregard such testimony, and to dismiss the same from your minds, and not consider it in this case. The defendant is only on trial for the crime charged in the indictment, and unless you believe from the evidence, beyond a reasonable doubt, that he is guilty of the identical crime charged in the indictment, it is your duty to acquit him." We are of the opinion that the testimony was properly admitted, and the rights of the defendant were carefully guarded by the court in its charge to the jury. The general rule is that one crime cannot be offered to prove a similar offense committed against another person at another time. But the circumstances shown in this case tend to show that the killing of the three boys, and their disappearance at the same time, were one continuing transaction. The state was reasonably bound to account for the absence or disappearance of Johnson and Neilson, the companions of the deceased. The killing of one bore upon the killing of the others, and tended to explain the motive, acts and intent of the slayer of Hayes.

In characterizing the act of defendant in killing Hayes, it was proper for the jury to view it in the light of all the circumstances to which it was subject at the time. It was proper for the jury to consider the condition of the weather; the ice upon the lake in February, and its absence in April; the size of the bullet, and the direction from which it was shot; whether the bodies

were placed under the ice, and how they came to be found on the shore of the lake; the defendant's efforts to prevent the search in the place where the bodies were found, and his condition of mind and manner when viewing the bodies; what he said and did indicating a malicious intent, or the absence of it. Along with the principal facts, the jury should be given the attending and surrounding circumstances constituting the *res gestæ*. "The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and, in its turn, becomes the prolific parent of the other; and each, during its existence, has its inseparable attribute, and its kindred facts materially affecting its character, and essential to be known, in order to a right understanding of its nature." The surrounding circumstances, constituting parts of the *res gestæ*, may always be shown to the jury along with the principal facts. *People* v. *Coughlin*, 13 Utah, 58; 1 Greenl. Ev. 108.

The size and character of the bullet that killed Johnson, and the wound made by it, were proper to be admitted in evidence in connection with the wounds made upon the deceased by a similar bullet, apparently shot from the same gun.

Upon a careful examination of the record, we are unable to find any error. The order and judgment of the court below appealed from are affirmed.

ZANE, C. J., and BARTCH, J., concur.