[Crim. No. 1069.   Department Two.—January 26, 1904.]

## THE PEOPLE, Respondent, v. BEITO LINARES, Appellant.

CRIMINAL LAW—REQUESTED INSTRUCTION—PRESUMPTION OF INNOCENCE —MODIFICATION.—Where the court gave to the jury the greater part of an instruction requested by the defendant, "that the law presumes the defendant innocent, and such presumption attends the defend-

CXLII. Cal.—2

ant throughout the entire case, and you should consider it together with the other evidence in arriving at your verdict, and such presumption may be sufficient to acquit the defendant, and is sufficient, unless you are satisfied beyond a reasonable doubt from the evidence that the defendant is guilty as charged in the information," the omission therefrom of the words "such presumption is to be considered by you as matter of evidence in favor of the defendant" cannot have prejudiced the defendant, and is not ground of reversal.

ID.—ROBBERY—EVIDENCE—RES GESTÆ.—Upon a trial for robbery evidence is admissible to show a series of events occurring shortly prior to the robbery, and leading continuously up to it, as a part of the same transaction; and the fact that after the defendant had discovered in a saloon that the prosecuting witness had a purse containing gold coin, and had commented on it, an assault and battery was made by defendant upon him in the saloon prior to the time of the final assault, battery, and robbery, which took place in the wagon of the prosecuting witness, does not render the evidence of all the facts inadmissible.

ID.—PROOF OF LOSS OF MONEY.—Where the prosecuting witness testified that after he had started with his horse and wagon away from the saloon he was pursued by defendant on horseback with a pistol, and compelled to return, and that he was then assaulted in the wagon with a stone and robbed, and that he lay a long time helpless in the wagon, until he was driven home by another person, it was proper for the prosecution to prove that he afterwards had no money, and the testimony of the driver is admissible to show that on the way the prosecuting witness turned his pockets inside out and showed the driver that he had no money therein. The possibility that the prosecuting witness may have himself removed his money goes only to the weight of the evidence, and not to its relevancy.

ID.—CONTROL OF CROSS-EXAMINATION—POWER OF COURT—DISCRETION.— A court has power for the orderly conduct of a trial to control the cross-examination of witnesses within reasonable limits; and where the defendant had cross-examined a witness for the prosecution at great length, and the court merely prevented frequent repetitions of the same questions, and defendant was not prevented from asking new questions, there was no abuse of discretion.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

W. H. Shinn, and C. L. Shinn, for Appellant.

U. S. Webb, Attorney-General, and C. N. Post, Deputy Attorney-General, for Respondent.

McFARLAND, J.—This is an appeal by defendant from a judgment and order denying a motion for a new trial in a case where he was convicted of robbery.

Appellant makes the formal contention that the information "does not state facts sufficient to constitute a public offense"; but very little argument is presented on the point, and it is enough to say that in our opinion the information is sufficient.

The contention that the evidence was not sufficient to warrant the verdict cannot be maintained. There was certainly some substantial evidence to the point of appellant's guilt; the prosecution's witness Fisher testified directly and distinctly to the facts constituting the robbery, and there was also corroborating evidence. The evidence of appellant was no doubt conflicting with that of the prosecution, but, taking it altogether, it fairly presented a case for the exercise of the judgment of the jury.

Only one point is made as to instructions to the jury. Appellant asked an instruction which the court did not give as presented, but did give in the following form: "The court instructs the jury that the law presumes the defendant innocent, and such presumption attends the defendant throughout the entire case, and you should consider it together with the other evidence in arriving at your verdict, and such presumption may be sufficient to acquit the defendant and is sufficient unless you are satisfied beyond a reasonable doubt, from the evidence, that the defendant is guilty of the crime charged in the information." The instruction as given was in the exact language of the one asked, except that it omitted these words, "such presumption is to be considered by you as a matter of evidence in favor of defendant." This omission furnished no ground for a reversal. Whether or not it would be correct, as a mere question of judicial literature, to call the presumption of innocence "evidence," the law on the subject is satisfied when the jury are clearly told that the defendant must be treated as innocent throughout the entire case until his guilt has been proved beyond a reasonable doubt, and they were so told in the case at bar. The defendant could not possibly have

been prejudiced by the omission; and, indeed, the instruction as given does refer to a presumption of innocence as evidence. (See *Agnew* v. *United States,* 165 U. S. 51.)

There are some exceptions to the rulings of the court as to admissibility of evidence. It is contended that the court erroneously allowed evidence of some occurrences which took place before the particular moment of the alleged robbery. In the afternoon of the day of the alleged robbery, Fisher, the person alleged to have been robbed, went, together with three other men, in a wagon to a saloon at the town of Los Nietos, some eighteen miles south of the city of Los Angeles. They had dinner in the kitchen adjoining the main room of the saloon. The barkeeper, Feeley, says that it was about four o'clock when they arrived. Some of the witnesses put the time a little earlier; but as these persons cooked their own dinner it must have been quite late in the afternoon when they finished eating their dinner and went back into the main saloon; and the evidence objected to was as to facts which occurred after they had finished their dinner and gone into the saloon. What occurred before that was of no consequence. The appellant was there in the saloon, and had been for a considerable time before that. Now, the evidence objected to was mainly as to these facts: When Fisher went back into the saloon, either in paying for the dinner or in treating the crowd, he took out from his pocket a purse which was seen to contain a considerable amount of money in gold coin. Immediately afterwards he purchased some barrels and cans from Feeley and paid him for them, and again exhibited his purse and money, and he testified that the appellant put his hand on the purse and said: "Look at that damn Jew, how much money he has got." He put these purchased articles in his wagon, which was in front of the saloon. He then started with his wagon, but after going a very short distance he discovered that one of the three men was not with him and returned to the saloon to get him. Some of the persons present took a part of the barrels and cans out of the wagon, and returned them to the saloon. The appellant took one of the barrels from the wagon into the saloon, and there was immediately afterwards a scuffle between Fisher and appellant over the barrel, in which appellant struck Fisher very violently

about the face, causing the blood to flow quite freely. In the scuffle appellant's coat was ripped on a corkscrew fastened to the bar. Shortly after this Fisher started off again in his wagon; but the appellant immediately mounted a saddle-horse and pursued him. He overtook Fisher at a distance of from a quarter to a half a mile from the saloon, and at the point of a pistol compelled Fisher to turn his team and return to the saloon, when appellant tied the horses to a hitching-place in front of it. It was then about dark, and it was then that, according to Fisher's testimony, the robbery took place. Fisher testified that at this time, while he was in the wagon, appellant struck him with his fist and with a stone, and knocked him helpless down into or across the wagon, and robbed him of his purse and money. We think that this series of events occurring so shortly before the very moment of the alleged robbery, and leading so continuously up to it, was admissible as part of the transaction; and these facts were not inadmissible, because they happened to include the assault and battery in the saloon. Indeed, it is difficult to imagine how an intelligible statement of the facts constituting the alleged robbery could have been made without reference to these preceding circumstances objected to. No matter at what point the narrative had been commenced, it in the end would almost necessarily have reached these connecting facts.

Exception is also taken to certain evidence given by Nicholson, a witness for the prosecution. After Fisher had been struck by appellant in the wagon, and, as he testified, robbed, he lay in the wagon helpless and unable to get out, and did not get out of the wagon until about nine o'clock that night, when Nicholson started to drive him home to Los Angeles. Nicholson testified that on the way Fisher turned all his pockets "wrong side out," and that there was no money in them. To this testimony appellant objected. The allowance of the testimony was not error. It had been clearly shown that before the time of the alleged robbery Fisher had considerable money in his pockets, and from that time he had not been out of the wagon. It was proper, therefore, for the prosecution to show that afterwards he had no money, and the fact that he had no money in any of his pockets was some evidence to that point. Counsel say that he might have removed his money

from his person, and of course that is so. But that suggestion goes only to the weight of the evidence objected to, and not to its relevancy.

Appellant contends that the court erred in not allowing him to further cross-examine the witness O'Connell. But it appears from the record that appellant had already cross-examined the witness at great length, and the court simply prevented frequent repetitions of the same questions; appellant was not prevented from asking new questions. A court, for the purpose of the orderly conduct of a trial, necessarily has authority to control the examination of the witnesses within reasonable limits, and we do not think that in this instance there was any abuse of discretion.

There are no other contentions in the case which are maintainable or which call for special notice. There are no doubt some features of the case which would warrant a strong argument against the appellant's guilt, and such argument was no doubt made to the jury; but there are no features of the case which would warrant this court in disturbing the verdict on the ground of want of evidence.

The judgment and orders appealed from are affirmed.

Lorigan, J., and Henshaw, J., concurred.