## PEOPLE v. NAGLE.

1. CRIMINAL LAW—LARCENY—EVIDENCE—RES GESTÆ.
   On a prosecution for stealing property from a barn in the night-time, evidence that other articles than those described in the information were taken from the barn at the same time and found in his possession, is admissible as res gestæ.

2. LARCENY—INTENT—OTHER OFFENSES.
   On a prosecution for entering a barn with intent to commit larceny, evidence of other larcenies committed by respondent is admissible as bearing upon his intent.[1]

Error to Berrien; Coolidge, J. Submitted February 26, 1904. (Docket No. 198.) Decided July 7, 1904.

Jacob Nagle was convicted of larceny and sentenced to imprisonment for five years in the State prison at Jackson. Affirmed.

*Ralph W. Shauman* and *James O'Hara*, for appellant.

*Charles A. Blair*, Attorney General, and *Ira W. Riford*, Prosecuting Attorney, for the people.

[1] As to evidence of other crime in criminal case, see note to *People* v. *Molineux*, (N. Y.) 62 L. R. A. 193.

MOORE, C. J.  The respondent was convicted of an offense charged in the information as follows:

"That Jacob Nagle heretofore, to wit, on the 29th day of July, in the year one thousand nine hundred and two, at the county of Berrien, aforesaid, in the night-time of said day, the barn of one James Marshall, then and there situate, did then and there enter without breaking, with intent then and there to commit the crime of larceny therein, and one bridle of the value of two dollars and fifty cents, and one neck-yoke of the value of one dollar, and one pair of breast straps of the value of one dollar, and one pair of rubber boots of the value of two dollars, in all of the value of six dollars and fifty cents, of the goods and chattels of the said James Marshall, in the said barn then and there being, then and there did steal, take, and carry away, contrary to the form of the statute."

The case is brought here by error.  No testimony was offered on the part of the respondent.  The testimony disclosed that the articles named in the information were in the barn of Mr. Marshall at night, and were not there in the morning; that about 10 days thereafter they were found concealed, with a large quantity of other property which had been stolen, upon the premises of the respondent, who lived a short distance from Mr. Marshall.  The neck-yoke had been painted another color.  When questioned about the property, the respondent stated to the officer he had bought them.

Early in the trial the following occurred:

"*Q.* I call your attention to this wagon pole.

"*Mr. Sterling:* If that is alleged in the information, it is all right.  Otherwise we object to it.

"*The Court:* Is it alleged?

"*Mr. Shauman:* No; I don't see it.

"*Mr. Sterling:* Nothing alleged about a wagon pole.

"*Mr. Riford:* That is true, but we have got a right to show it for the purpose of showing intent.

"*The Court:* I don't think you have arrived at that place yet.

"*Mr. Riford:* Very well; pass it for the present.

"*Mr. Shauman:* Do I understand your honor to rule the presence of the articles in here is not objectionable?

"*The Court:* I don't know anything about those articles at all.   When the testimony comes up, I will know about them, perhaps.   I saw some men bring them in, but I don't know anything about them.   Of course, if you have any objection to more than one article being produced at a time, perhaps the rest of them can be taken out.

"*Mr. Shauman:* No; give me an exception to the ruling."

Still later the following occurred:

" *Mr. Shauman:* I believe the people have rested.   I want to·call attention again, to get it into the record, that this stuff is again in the court-room, and ask to have removed all of the stuff except what is alleged in the information.   (The same objection as was raised before.) This crosscut saw, scoop shovel, and two or three things. not alleged in the information, I ask to have removed.

" *The Court:* I think the goods may be removed, except what is alleged.   (Goods referred to removed out of the court-room.)"

The prosecution was allowed to show that a wagon pole was taken from Mr. Marshall's barn upon the night in question, and found in the possession of the respondent at the time the other things were found, when the following occurred:

" *The Court:* So far as stealing something else belonging to other parties is concerned, your objection may be good, but it is simply this: Witness can testify to other property of his being there at the same time he found those.   That I haven't any doubt about.

" *Mr. Shauman:* Note an exception.

" *Q.* I want to call your attention to this pole.

" *The Court:* The jury cannot convict this defendant for stealing anything that is not alleged."

Still later the following occurred:

" *Q.* Did you have a search warrant?

" *A.* Yes, sir.

" *Q.* What other stuff did you find in the barn?

" *Mr. Shauman:* I object to the question.

" *The Court:* Yes, I think perhaps the objection is good.   I have limited it to the property which was proved

or claimed to be owned by the complaining witness. Of course, whatever the defendant said in regard to property there is admissible.

" *Q.* Did you see a bridle with lines to it in the corn-crib?

" *A.* Yes, sir.

" *Q.* Who was present?

" *A.* At that time?

" *Q.* Yes.

" *A.* Mr. Neely, Mr. Marshall, Mr. Wheaton; I think, Mr. Murdoch. There was a number there by that time. I did not open the corncrib until after I had sent Mr. Neely with a team to get the different parties that had lost stolen property, and to get them there before I opened— started in a systematic search; but while they was gone, while he was gone getting those other witnesses, other parties that had lost—

"*Mr. Shauman*: Wait. I object to this testimony, and move it be stricken out. What is it for ?

"*The Court:* At the present time I do not see the necessity of it. The question is proper. The other part may be stricken out."

The prosecutor asked the witness no other question. The attorney for the respondent at once began the cross-examination, as follows:

" *Q.* Mr. Pearl, what was the crowd doing there that Sunday?

"*A.* There was a great deal of excitement there.

" *Q.* Why ?

"*A.* Because there had been a lot of stolen property found.

" *Q.* How do you know it was stolen?

"*A.* It had been identified by between 30 and 40 different people.

" *Q.* Did you see it stolen?

"*A.* No, sir.

" *Q.* How do you know it was stolen ?

"*A.* I found it in this man's possession, and it had been identified by different people."

The cross-examination was continued at great length, and showed in detail what was found on the premises of respondent, and the various persons who claimed to own it.

Error is assigned because some of the stolen articles were permitted to be in the court-room during the progress of the trial. In view of the offer of the judge to have them removed, and produced one at a time, and the reply of counsel, we deem it unnecessary to pass upon the question.

Error is assigned because testimony of the finding of stolen property in the possession of respondent was allowed. The court had confined the prosecutor to proof of articles taken from the barn of Mr. Marshall upon the night when the property described in the information was taken. We have no doubt this testimony was admissible as part of the res gestæ, even though some of the articles were not described in the information. After this ruling of the court, the attorney for the respondent brought out, upon the cross-examination, the fact that many stolen articles were found in the possession of the respondent. Under these circumstances we do not deem it necessary to discuss the assignment of error upon this branch of the case.

Counsel for respondent presented three requests to charge, all of which were refused, except as covered by the general charge. The first of the requests asked the court to direct a verdict of not guilty of the main offense charged. The other requests are as follows:

"In considering the testimony, the jury are not at liberty to consider any testimony of other larcenies than that alleged in the information in this case, as any evidence of the larceny so alleged, or as making it more probable that the larceny for which the respondent is being tried was committed by him. The respondent is on trial only for the offense charged in the information, and he can be convicted only upon the evidence of the offense so charged, and not upon evidence of some other offense.

"I charge you that, in arriving at your verdict as to the guilt or innocence of the respondent upon the main offense alleged in the information, you have no right to consider any testimony as to any other offense than the one charged."

In his general charge the judge said in part as follows:

" According to the contention, gentlemen, in this case, and according to the case as it is presented before you, the only question is whether this barn was entered in the night-time or not. Now, by the word or phrase 'night-time' we usually mean that period of the 24 hours when a person's features cannot be easily discerned or readily discerned. In this definition the light of the moon is excluded; the light of the moon has nothing to do with it. * * *

"No technical rule can be laid down for you to be governed by. In some States statutes have been enacted with reference to this question. In England, for instance, by statute, night means from nine o'clock at night until six o'clock in the morning; in the State of Massachusetts, by statute, night means from one hour after sunset to one hour before sunrise; and in some localities night is meant from sunset to sunrise. But I do not lay down any technical rule. I simply lay down this general rule: That it is that period of the 24 hours in which a person's features cannot be readily discerned. * * *

"Now, in this case you are to use your common sense. From all the evidence and from all the circumstances which have been developed upon the trial you are to say whether there is any reasonable doubt of those goods having been taken or this barn entered during the night-time. If you have any reasonable doubt with reference to the matter, then, gentlemen, you should not convict. If you have no reasonable doubt with reference to this defendant having entered the barn in the night-time, why, then it becomes your duty to convict. * * *

"Now, gentlemen, if you find that this defendant is not guilty of entering the barn in the night-time, you can still convict of simple larceny; that is, of larceny of property of the value of less than $25. I mean to say that, if you find the defendant is not guilty of entering the barn in the night-time, you then have the power to find this defendant guilty of simple larceny. * * *

" So, in this case there are three verdicts: One of acquittal; one guilty of entering the barn, or guilty of the charge contained in the information; or, third, guilty of larceny. Either one of these three verdicts you can bring in if the evidence appears to you to warrant."

Error is assigned upon the refusal to give respondent's requests. In the course of the trial the court had repeat-

edly told the jury that respondent could be convicted only of the offense charged in the information. There was no claim made that testimony of other larcenies could be considered except upon question of intent. The respondent could not be convicted of the main offense charged without the people proving beyond a reasonable doubt that respondent entered the barn with intent to commit the crime of larceny. As bearing upon the question of intent, we think the jury might consider the testimony. *People* v. *Henssler*, 48 Mich. 49 (11 N. W. 804); *People* v. *Wakely*, 62 Mich. 297 (28 N. W. 871); *People* v. *Hawkins*, 106 Mich. 479 (64 N. W. 736); *People* v. *Ascher*, 126 Mich. 637 (86 N. W. 140).

We do not find any reversible error.

Judgment is affirmed.

The other Justices concurred.