STATE, RESPONDENT, *v.* WELCH, APPELLANT.

(No. 6,141.)

(Submitted June 6, 1927. Decided June 29, 1927.)

[257 Pac. 1010.]

*Criminal Law — Homicide — Circumstantial Evidence — Sufficiency — Accomplices — Appeal — Review of Evidence—Rule Where Defendant Failed to Ask for New Trial.*

Homicide—Appeal—Sufficiency of Evidence—Extent of Review Where Defendant Did not Move for New Trial.
  1. Where defendant in a criminal cause on conviction did not move for a new trial, the review of the evidence by the supreme court under the assignment that it is insufficient to justify the verdict is limited to the determination whether there is any substantial evidence to support it.

Same—Joint Indictment of State's Witness not Alone Sufficient to Make Him an Accomplice.
  2. The mere fact that a witness for the state was jointly charged with defendant on trial for murder did not make him an accomplice; whether he was such being dependent upon whether the facts justified his indictment for the offense for which accused was being tried, and if in what he did he acted under compulsion of fear impelled by threats he was not an accomplice.

Same—Circumstances Indicative of Guilt.
  3. The facts that defendant, with others, was present at the homicide for which he was on trial; that he and another aided each other in removing blood from their person; that he took part in concealing evidence of the crime, and gave false explana-

1. See 2 R. C. L. 197.

[79 Mont. 614.]

tions of the absence of the deceased from the cabin in which the killing occurred, were circumstances indicating guilt, amounting to substantial evidence, the weight of which was for the jury.

Same—Circumstantial Evidence—When Deemed Sufficient to Sustain Conviction.

4. Where, in a prosecution for homicide the state has made out a strong case of incriminatory circumstances against defendant which remain unexplained, sufficiently meeting the rule that where circumstantial evidence is relied upon for conviction, all the circumstances proved must be consistent with each other and with the hypothesis that the accused is guilty, and inconsistent with any other rational hypothesis, the verdict of guilty will not be disturbed on appeal.

[1]   Criminal Law, 17 C. J., sec. 3349, p. 87, n. 43.
[2]   Criminal Law, 16 C. J., sec. 1344, p. 671, n. 71; sec. 1361, p. 675, n. 26.
[3]   Criminal Law, 16 C. J., sec. 1350, p. 672, n. 84; sec. 1566, p. 762, n. 34, p. 763, n. 35; 17 C. J., sec. 3593, p. 255, n. 52; sec. 3595, p. 267, n. 93. Homicide, 30 C. J., sec. 547, p. 300, n. 75, p. 301, n. 86, 98; sec. 548, p. 303, n. 18; sec. 560, p. 314, n. 54; sec. 587, p. 333, n. 49 New.
[4]   Criminal Law, 16 C. J., sec. 1568, p. 765, n. 60; 17 C. J., sec. 3593, p. 255, n. 54 New.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

JAY WELCH was convicted of murder in the second degree and appeals from the judgment.   Affirmed.

*Mr. Lester H. Loble* and *Mr. Hugh R. Adair,* for Appellant, submitted an original and a supplemental brief and argued the cause orally.

It was not the theory of the state that Welch killed Billstrom. The theory was that he was guilty of participation in the offense charged. The testimony of Sass alone is responsible for the conviction. Sass' testimony shows more participation on the part of the witness Sass than on the part of the defendant Welch. It is not corroborated. It is purely circumstantial, and not of such character or weight as to satisfy the requirements of the law in such a case. The verdict is, therefore, contrary to the evidence, and like-

4.   See 8 R. C. L. 226.

wise contrary to law. We believe that not only is the evidence insufficient, but there has been a failure of proof, and that the defendant has been convicted upon suspicions and conjectures. (*State* v. *Welch*, 22 Mont. 92, 55 Pac. 927; *State* v. *Riggs*, 61 Mont. 25, 201 Pac. 272; *State* v. *Riggs*, 56 Mont. 393, 185 Pac. 165; *State* v. *Gomez*, 58 Mont. 177, 190 Pac. 982; *State* v. *Brower*, 55 Mont. 349, 177 Pac. 241; *State* v. *Schrack*, 60 Mont. 70, 198 Pac. 137; *State* v. *Mullins*, 55 Mont. 95, 173 Pac. 178; *State* v. *Postal Telegraph Cable Co.*, 53 Mont. 104, 161 Pac. 953; *State* v. *Sieff*, 54 Mont. 165, 168 Pac. 524; 30 C. J. 297, 298.)

The mere evidence that the defendant was present at the place of the homicide when it was committed does not, in the eyes of the law, indicate that he participated in the crime. It does not meet the requirements of section 10732, Revised Codes of 1921. The evidence does not show that Welch aided or abetted during or before the commission of the crime. (See 29 C. J., sec. 42; *Polk* v. *State* (Okl. Cr.), 224 Pac. 194; *Moore* v. *State*, 4 Okl. Cr. 212, 111 Pac. 822; *State* v. *Sieff*, supra; 30 C. J. 301, 302.)

*Mr. L. A. Foot*, Attorney General, and *Mr. I. W. Choate*, Assistant Attorney General, for the State, submitted a brief; *Mr. Choate* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

On Sunday afternoon, December 27, 1925, two hunters observed the body of a dead man in Skelly Gulch on the Fletcher ranch, a remote spot in Lewis and Clark county. Their attention was first attracted by a bloody trail in the snow, indicating the course over which the body had been dragged. They notified the sheriff of the fact and he, with one of the hunters, and some others, proceeded to the Fletcher ranch, arriving there about midnight. On this ranch there is a log cabin, which serves as a dwelling-house, with a door in the

east end. At the west end and four or five feet distant
from the main building is a smaller cabin with a door opening
to the south. This small building was used for the purpose
of making moonshine whisky and when the sheriff arrived
there Frank Gray and Jay Welch, the defendant, were en-
gaged in that nefarious work. The sheriff asked Gray
what he was doing there, to which Gray answered that he
had arrived there about dark. The sheriff then asked where
the other party was, and Gray said: "Who do you mean,
Billstrom?" The sheriff said, "Yes, Billstrom." Both Gray
and Welch said he had gone to town. The sheriff asked,
"When did he go to town?" and Gray replied: "About
four or five days ago." The sheriff then suggested that there
must have been a rough-house before Billstrom pulled out,
and in response to that, according to one of the witnesses,
the defendant said, "The Wop had throwed him out, had
a row with him and throwed him out and went to town."
By the "Wop," George Sass, a Roumanian, was meant and
it was ascertained that he was sleeping in the dwelling-house.
At this time the defendant was under the influence of liquor.
Sass when awakened was found to be in a like state. As
soon as Sass was dressed, the sheriff and his party took
Gray, Welch and Sass to the place where the body was found,
Otten, one of the hunters, acting as guide. The body was
that of John Billstrom. His head had been beaten in with
a blunt instrument.

On the next day an examination of the premises disclosed
that two men had dragged the body of Billstrom from the
northeast corner of the dwelling-house to a point in Skelly
Gulch about 400 yards distant. Blood spots were found on
the floor of the dwelling-house and on the logs outside at
the northeast corner of the house.

Gray, Welch and Sass were charged by information with
the crime of murder in the first degree. The defendants
pleaded not guilty. While the record does not disclose it
affirmatively it is evident that they demanded separate trials.

At the trial of the defendant Welch, Sass became a witness for the state. He testified that on Christmas Eve, Gray, Welch, Billstrom and himself were at the ranch. Gray slept in the small cabin while Billstrom, Welch and himself slept in the dwelling-house. On Christmas morning Gray told Billstrom to get ready to go to town but Billstrom said he could not do so because he was sick. Gray told him he would make him go pretty soon. Gray then told Sass to go after the horses and to get ready to go to the bridge, meaning the railroad trestle across Greenhorn Creek. Sass was gone about half an hour. When he left the house Gray, Welch and Billstrom were there. When he returned to the cabin he saw Gray and Welch standing in the door. Billstrom was on the ground alongside the cabin with a rope around his body; he was dead. In the cabin there was blood all over the floor. There was a double-bitted ax lying about ten yards from the body of Billstrom upon which there was blood and hair. "It had the drops here and there all over it; on the bit of the ax it had just a few drops here and there." There was an ax behind the door in the cabin with a broken handle and upon this ax there were a few drops of blood. Gray told Sass to help Welch drag Billstrom "into the draw." When Sass hesitated Gray said, "Do you see that man over there?" and from this expression Sass believed that if he did not do as he was ordered, something would happen to him as it had to Billstrom, and so he obeyed. He and Welch wrapped the rope around the handle of the double-bitted ax. Then each took hold of an end of the ax handle and they dragged Billstrom's body to the spot where it was found. It took about fifteen minutes to drag the body down to the gulch. After leaving the body there Sass and Welch came back to the cabin. Gray then told Sass to get a pan of water, "and then Gray and Welch washed one another in the water that I brought over from the cabin. The part they washed was everywhere there was blood. I never paid any attention to where the blood was on them.

Yes, I said that after Welch and I dragged the body down
the gulch I got some water for Frank Gray and Welch.
Frank Gray told me to get the water and Gray and Welch
washed themselves.  They washed their hands, and shoes and
clothing and everything.'' Immediately after this Gray and
Sass took ten gallons of whisky to the Greenhorn trestle
where Gray's automobile was.  Gray told Sass to return to
the ranch and to clean up the blood and if necessary to take
ashes and cover it, and this he did.  He washed the double-
bitted ax but not the other.  Gray and Welch never told him
anything about the killing of Billstrom and he never asked
any questions because he was afraid.  Gray told him not to
say anything if anybody inquired about John Billstrom;
that nobody would look for Billstrom because he was an old
man and had nobody to look after him.  Gray said to him
that if he told anybody, that would happen to him which
had happened to Billstrom.  When Sass got back to the
ranch he found that Welch had removed the mattress upon
which Billstrom had slept, and Billstrom's clothes, from the
cabin.  After starting to clean up the blood Sass talked with
Welch and Welch said, ''Everything is all right.''

Upon cross-examination Sass admitted that he had told
a different story but said it was not true; he had told it at
the instance of Gray; Gray had offered to give him $500.
The defendant did not take the stand nor did the defense
offer any testimony.  The jury found the defendant guilty
of murder in the second degree, and on March 8, 1926, the
court imposed a penalty of not less than thirty nor more than
sixty years in the state prison.  The defendant on March 5,
1927, appealed from the judgment.

To bring about a reversal of the judgment counsel for de-
fendant insist that the evidence is insufficient to justify the
verdict.

As the defendant did not move for a new trial our review
[1]  of the evidence may extend no further than to determine

whether there is any substantial evidence to sustain the verdict. (*State* v. *Brantingham,* 66 Mont. 1, 212 Pac. 499.)

While Sass was charged jointly with Gray and Welch, that [2] fact alone does not make him an accomplice. It is true that we said in *State* v. *Smith,* 75 Mont. 22, 241 Pac. 522, "the test to determine whether one is an accomplice is to ascertain whether he could be indicted for the offense for which the accused is being tried" (12 Cyc. 445), but this language of course implies that the facts are such as to justify the indictment of the person for the offense for which the accused is being tried. One might be indicted with another wholly without justification. "To constitute a witness for the state an accomplice he must have entertained a criminal intent common with that which had moved the defendant to commit the crime with which he stood charged, or, not having been present at its commission, must have advised and encouraged it." (*State* v. *Smith,* supra.)

If Sass acted at the command of Gray, being impelled to do what he did by fear, it cannot be said that he was an accomplice. Whether he acted of his own volition or under the compulsion of fear was a question for the jury. We cannot say, upon the testimony, that he did not act under the influence of fear in disposing of the body and attempting to conceal the evidence of the crime.

If Sass was a competent witness his testimony was entitled [3] to whatever weight the jury saw fit to give to it. We have then this situation: A man leaves a cabin in which there are three men, and when he returns in a short time one of the men is dead and the other two are seen standing in the doorway near the corpse. All around are evidences of homicide. What inference is to be drawn? If Sass had found but one man present when he returned, no one would be heard to say that the surrounding facts and circumstances were not sufficient, in the absence of explanation, to fix upon the man there present with the victim the full responsibility for the homicide.

It is true that Gray was in command. He was the man who gave the orders to Sass. He did not give any orders to Welch. There seemed to be a complete understanding between Gray and Welch. There is no testimony even remotely suggesting that Welch was acting under fear of Gray. Welch and Sass dragged the body over the snow a distance of 400 yards to a secluded spot. Upon their return Welch and Gray washed each other, they "washed everywhere there was blood." "They washed their hands, and shoes, and clothes, and everything." After Sass returned from delivering the moonshine whisky to the automobile at the Greenhorn trestle and was about to begin cleaning up in accordance with the order of Gray, Welch assured him that everything was all right.

It is true that the mere presence of a person at the time of a homicide is not sufficient to sustain a verdict convicting him for the commission of the homicide or for aiding or abetting in its commission; but it is a circumstance which may be considered by the jury. Under the surrounding facts and circumstances in a given case it may be entitled to great weight. The fact that two men who were present at the homicide mutually engage in the removal of blood from one another's persons certainly is a circumstance indicating guilt. (*State* v. *Lambert,* 97 Me. 51, 53 Atl. 879; *Norris* v. *State* (Tex. Cr. App.), 64 S. W. 1044; *Burleson* v. *State,* 33 Tex. Cr. Rep. 549, 28 S. W. 198.) The fact that one who was present at the commission of a crime, himself able to have committed it, takes part in concealing evidence of the crime is a circumstance tending to show his guilt. (30 C. J. 301; *State* v. *Dickson,* 78 Mo. 438; *People* v. *Galbo,* 218 N. Y. 283, 2 A. L. R. 1220, 112 N. E. 1041.) When an accused has given false explanations as to the absence of the deceased, this fact in connection with other circumstances may warrant the inference of his guilt. (30 C. J. 299; *Territory* v. *Bryson,* 9 Mont. 32, 22 Pac. 147; *State* v. *Brown,* 168 Mo. 449, 68 S. W. 568; *State* v. *Hayes,* 14 Utah, 118, 46 Pac. 752.)

The criminatory circumstances above set forth amount to substantial evidence, the weight of which was a question for the jury alone. They heard Sass testify, observed his demeanor upon the stand, and gave credence to what he said. His story is not so utterly unworthy of belief as to warrant us in disturbing the verdict. We are not permitted to do so.

Whether justice has been meted out to the principal offender [4] in this atrocious murder, whoever he may be, is doubtful, but that does not warrant a reviewing court in disturbing the verdict of a jury where the evidence has made out a prima facie case against the defendant calling for an explanation of the damning circumstances against him, and no explanation has been made.

We have in mind the rule that in order to sustain the conviction of one found guilty upon circumstantial evidence, all the circumstances proved must be consistent with each other and with the hypothesis that the accused is guilty, and at the same time inconsistent with any other rational hypothesis (*State* v. *Suitor,* 43 Mont. 31, Ann. Cas. 1912C, 230, 114 Pac. 112), but the facts and circumstances commented upon, in the absence of explanation, are consistent with the guilt, and are not consistent with the innocence, of the prisoner. There is, then, some substantial evidence to sustain the verdict. This being so it is our duty under the law to affirm the judgment, and it is so ordered.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.

Rehearing denied July 18, 1927.