**BRUCE et al. v. UNITED STATES.**

**No. 10022.**

Circuit Court of Appeals, Eighth Circuit.

Nov. 14, 1934.

Rehearing Denied Dec. 22, 1934.

Ralph Davis, of Memphis, Tenn., for appellants.

Irwin Sale, Asst. U. S. Atty., of St. Louis, Mo. (Harry C. Blanton, U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

Appellants were convicted of violating the National Motor Vehicle Theft Act (18 USCA § 408), under an indictment charging that they unlawfully, knowingly, willfully, and feloniously, did transport and cause to be transported in interstate commerce a certain motor vehicle, to wit, one Chevrolet sedan, bearing motor number 3859600, by then and there driving and causing to be driven said motor vehicle by its own motive power, from the city of Memphis, in the state of Tennessee, to the city of St. Louis, in the state of Missouri.

For convenience, we shall refer to the appellants as defendants. They urge (1) the insufficiency of the evidence, and (2) errors in admitting evidence.

At the opening of the trial, counsel for defendants stated on behalf of his clients "that the record may disclose the fact that the accused, John Bruce, accompanied by his co-defendant and brother, Horatio Thomas Bruce, transported in interstate commerce car of the description stated in indictment and bearing motor number 3859600, likewise mentioned in indictment, from the City of Memphis, in the State of Tennessee, into the City of St. Louis, in the State of Missouri. Of course, the fact that it was transported unlawfully or that the car had been stolen and the transportation was with the knowledge that it had been stolen is challenged." It was also admitted that on or before December 2, 1933, D. C. Lauderdale, Jr., of Forrest City, Ark., was the owner and had custody and control of the car; that its possession was vested in him; that this particular car was the car stated in the indictment. These facts are also admitted on this appeal, so that the question of fact involved was whether or not the car had been stolen, and whether it was transported by the defendants with knowledge that it had been stolen.

There is evidence that D. C. Lauderdale, Jr., who owned the Chevrolet car described in the indictment, lived at Forrest City, Ark., where he was engaged in the practice of law: that he came to Memphis, Tenn., November 28, 1933, to look after certain legal matters for the defendant Horatio Thomas Bruce, whose divorced wife had brought suit against him in Memphis, Tenn.; that, while in Memphis, Tenn., he attended the Orpheum Theater, driving to the vicinity of the theater in this car, where he parked it. On coming from the theater, he discovered the car had been removed. He gave no one permission to take it. At the time the car was taken it bore a Mississippi license plate. Neither of the defendants took the witness stand.

On December 2, 1933, defendants appeared at a filling station in St. Louis, Mo., driving this car, the car then bearing a Tennessee license number. They purchased ten gallons of gas and tendered in payment a check for $5. The operator of the filling station, being suspicious of the genuineness of the check, did not cash it, but asked the defendants to return in the afternoon, when he would give them the balance of their money. Defendants returned between 2:30 and 3:00 o'clock, one of them calling at the filling station, and the other going across the street. Police officers appeared upon the scene about this time. The defendant John Bruce attempted to flee and was pursued some eight blocks. The defendant Horatio Thomas Bruce was at the filling station, where he was detained.

Defendants, on the 30th of November, 1933, had stopped at a filling station at Osceola, Ark., and the defendant Horatio Thomas Bruce then represented himself as being R. C. Ballard. He proffered a $5 check, which he indorsed with the name R. C. Ballard. When they came into this filling station, they were headed north, but when they left they turned around and started back south. They were driving the car described in the indictment.

They were both apprehended by police officers at the filling station in St. Louis, where they had presented the check. Defendant John Bruce, being asked by the officers what he did with the Chevrolet car that he drove up to the filling station that morning, said that it was not a Chevrolet, but a Ford. He also stated that he sold the automobile on Locust street. When searched by the officers, the defendant John Bruce had some money in his pocket, some keys, and one key which fitted the Chevrolet car in question. Before being taken to the police station, both defendants were taken to the Chevrolet car parked in that vicinity, and both denied knowing anything about the car. Later, defendant John Bruce said he got the car from a man by the name of Tom C. Battie; that defendants were supposed to sell the car for Battie, and they then admitted that they did not come to St. Louis in a Ford car. After his arrest, there was found, in the hotel room occupied by the defendant John Bruce, an ignition jumper, with certain clothes belonging to said defendant.

It was the claim of defendants that the automobile had not been stolen, but that they had been given custody of it by its owner, with authority to sell it. This, however, was denied by the owner, and the conflict in the evidence was determined by the jury adversely to the contention of defendants. The evidence, if believed by the jury, was sufficient to show beyond a reasonable doubt that the automobile was stolen on or about the 28th of November, 1933, at Memphis, Tenn. The owner of the car, in addition to testifying to the facts as to where the car was left by him, and that on his return the car was gone, testified without objection as follows: "Q. In other words, it was stolen? A. Yes, sir."

The evidence shows that the defendants were in Memphis, Tenn., on that date, and that they knew the car was there in the possession of its owner. As said by us in Niederluecke v. United States, 47 F.(2d) 888, 889:

"It is well established that the unexplained possession of stolen property shortly after the theft is sufficient to justify the conclusion by a jury of knowledge by the possessor that the property was stolen. The facts in the present case are very much stronger, for they add to this presumption the fact that the one later found in possession was present at the place and at about the time the theft was committed."

In Drew v. United States (C. C. A. 2) 27 F.(2d) 715, 716, the court, in discussing the question of the sufficiency of the evidence, said: "The plaintiff in error argues that there was no evidence of transportation by him. It appears that the plaintiff in error was in possession of the stolen property in New York within 12 days after it had been stolen in New Jersey. This raised a presumption that he was the thief and had transported it to New York."

■ Upon the record in this case, the only other issue to be submitted to the jury was limited to the question whether the transportation of the car was with guilty knowledge. The attending circumstances are significant on this issue. Upon their arrest, defendants were taken to where this car was parked, and both denied knowing anything about the car. On the other hand, one of the defendants stated that they had been driving a Ford car. While in the act of transporting the car, one of the defendants, for the apparent purpose of concealing his identity, gave his name as R. C. Ballard, and indorsed a check with that name. These were acts indicative of bad faith and guilty knowledge. The testimony and attending circumstances, aided by the inference arising from the possession of recently stolen property, which defendants admit they transported in interstate commerce, leave no room for doubt as to the sufficiency of the evidence to sustain the verdict.

■ It is urged that the court erred in permitting the government to prove the giving of the check at the filling station in St. Louis, and the giving of the check at the filling station at Osceola, Ark., because this evidence tended to prove the commission of another crime wholly independent of that charged in the indictment. The vital question at issue was whether, in transporting the car, the defendants acted with guilty knowledge. Intent or guilty knowledge may be established by circumstantial evidence, and these circumstances, including the denial of the defendants that they had any connection with this car, or had driven it into St. Louis, or knew anything about it, were admissible as tending to show that they had knowledge that the car was a stolen one. These circumstances are all closely connected with the transportation of the car, and they cannot be said to be evidence of other independent transactions. The mere fact that this evidence may tend to prove some other crime does not render it inadmissible. State v. Corrigan, 262 Mo. 195, 171 S. W. 51; People v. Nagle, 137 Mich. 88, 100 N. W. 273; State v. Halpin, 16 S. D. 170, 91 N. W. 605. The testimony related to matters constituting a part of the res gestæ, and under this rule it was proper to show acts, statements, occurrences, and circumstances forming a part or a continuation of the main transaction. State v. Williams (Mo.) 183 S. W. 308; State v. Baker, 209 Mo. 444, 108 S. W. 6; State v. Phillips, 118 Iowa, 660, 92 N. W. 876; People v. Linares, 142 Cal. 17, 75 P. 308; Collins v. State, 138 Ala. 57, 34 So. 993; State v. Hayes, 14 Utah, 118, 46 P. 752; Fowler v. State, 8 Okl. Cr. 130, 126 P. 831.

■■ It is also urged that the court erred in refusing to suppress the evidence of certain police officers on the ground that the same was illegally obtained. These police officers, however, were acting independently and not in aid or in assistance of federal officers, and hence the evidence was not inadmissible under the search and seizure clause of the Constitution (Amendment 4). Lerskov v. United States (C. C. A. 8) 4 F.(2d) 540; Elam v. United States (C. C. A. 8) 7 F.(2d) 887; Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159; Thomas v. United States (C. C. A. 4) 290 F. 133; Riggs v. United States (C. C. A. 4) 299 F. 273. The ignition jumper was found in the room of one of the defendants, among his clothes, after he was placed under arrest. The arrest being legal, which we must presume, the search was not unreasonable, and the articles taken from the room of one of the defendants were clearly admissible.

We have considered all the other objections urged, but are of the view that none of them present prejudicial error.

The judgment appealed from is therefore affirmed.