# THE STATE v. JOHN BAKER, Appellant.

### Division Two, February 18, 1908.

1. **RES GESTAE: Evidence: Statements of Party Injured.** In a prosecution for murder, all that occurred at the time and place of the shooting, which had reference thereto or connection therewith, was part of the *res gestae*, and was properly admitted in evidence; and, therefore, it was not error to permit a witness, who was wounded by defendant at the time of the shooting of deceased, to testify as to the nature of the wound the witness received and as to what he said and did following the shooting.

2. **DEFENDANT AS WITNESS: Impeachment: Reputation: Improper Form of Question: Rebuke.** When a defendant testifies as a witness in his own behalf, he is subject to impeachment by evidence of his general reputation for truth and morality, the same as any other witness. While a question propounded to a witness, if he knew the defendant's reputation for truth and veracity as an average negro, was not in proper form, yet the subject of the inquiry was a proper one, and the question being presumably asked in good faith, a rebuke of the prosecuting attorney for asking the question was not called for.

3. **REMARKS OF COUNSEL: Rebuke: No Exception: Waiver.** The prosecuting attorney, in his closing address to the jury, said: "The parties to this killing were negroes, and if you allow negroes to shoot each other, how long will it be until they are shooting you white men?" Upon objection by defendant to these remarks, the court said to the prosecuting attorney: "It is improper for you to appeal to race prejudice, or refer to the race of the defendant. It must not be repeated, you must stay in the record." *Held*, that the court's rebuke was sufficient; and, besides, no exception being taken or saved at the time to the insufficiency of the rebuke, the point must be considered as waived.

4. **JURY: Separation: Misconduct: Affidavit.** An affidavit which states that affiant left at the residence of one of the members of the jury a daily paper which contained a statement with reference to the trial, and the names of the jurors selected to try the case, and the names of the attorneys engaged in the trial, but which does not say that the juror ever saw or read the paper, is no proof that the jury separated, or that any member of the jury was guilty of misconduct.

5. **MURDER: First Degree: Sufficiency of Evidence.** Evidence held sufficient to support the verdict finding defendant guilty of first degree murder.

State v. Baker.

6. ————: Shooting at One, Killing Another: Intent. Although defendant may have shot at one party with the intention of killing him, and killed another party, he is equally as guilty of murder as if he had killed the party whom he intended to kill, since the felonious intent in such case follows the bullet.

Appeal from Boone Circuit Court.—*Hon. E. W. Hinton,* Special Judge.

AFFIRMED.

*Boyle G. Clark* for appellant.

(1) The court erred in allowing witness Lewis Berry to testify as to the nature of the wound that he received, and as to what he said and did following the shooting. State v. Hendricks, 172 Mo. 672. (2) The court erred in allowing the prosecuting attorney to ask a witness questions in regard to defendant's character, when his character was not in issue, without rebuking the prosecuting attorney, and instructing the jury that defendant's character was not in issue. State v. Rose, 178 Mo. 34. (3) The court erred in not granting defendant a new trial on account of the prejudicial remarks of the prosecuting attorney. State v. Rose, 178 Mo. 34; State v. Ferguson, 152 Mo. 99; State v. Dawson, 24 S. W. 414; State v. Jackson, 95 Mo. 653 (4) The court erred in allowing the jury to separate after their selection to try the cause, and upon the hearing of defendant's motion for a new trial should have required the State to show that there was no ground for prejudice of defendant's cause on account of such separation. State v. Schaeffer, 172 Mo. 342. Defendant filed an affidavit in support of his motion for a new trial, showing that there was probable ground for prejudice on the part of the jury, and the State made no effort to show that there was no ground for prejudice, as by law it was required to do. State v. Orrick, 106 Mo. 126.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) No error was committed by the court in allowing the jury to separate prior to the time that the jury was sworn. Our statute simply requires that the jurors shall be kept together after they are sworn to try the case. R. S. 1899, sec. 2628; State v. Todd, 146 Mo. 300. But even if error was committed by the court in this regard, the same has been waived by defendant, as the bill of exceptions does not show that he made any objections or saved any exceptions to the ruling of the trial court. State v. Frier, 118 Mo. 648. (2) No error was committed by the trial court in permitting the State to prove that defendant shot and wounded Lewis Berry and Shannon Stark, immediately after he had shot and fatally wounded Boss Hall, the deceased. State v. Cavin, 199 Mo. 158; State v. Woodward, 191 Mo. 633; State v. Vaughan, 200 Mo. 1; State v. Spaugh, 200 Mo. 598. (3) No error was committed by the trial court in not reprimanding the prosecuting attorney for asking State's witness Bedford about the general reputation of defendant for truth and veracity. The defendant had already testified in full in regard to the case, and, like any other witness, was subject to contradiction and impeachment. When, therefore, the trial court sustained defendant's objection to the State's question, and refused to allow the witness to testify to defendant's reputation, it committed error in favor of defendant, of which he can not complain. Again, defendant seemed satisfied at the action of the court (and well he may have been), for he did not save any exceptions to the ruling, nor ask that the prosecuting attorney be reprimanded. And still further, no mention is made of said alleged error in defendant's motion for a new trial, which constitutes a waiver. (4) The court's rebuke of the prosecuting attorney for improper argument was sufficient, and was evidently satisfactory to

defendant, as he saved no exceptions at the time.   (5)
No error was committed by the trial court in overruling
the motion for a new trial on the ground of alleged mis-
conduct of juror Park.   State v. Hunt, 141 Mo. 637;
State v. Howard, 118 Mo. 127; State v. Burns, 85 Mo.
47; State v. Phillips, 117 Mo. 394.

BURGESS, J.—At the October term, 1906, of the
Boone Circuit Court, the defendant was convicted of
murder, in the first degree, under an indictment charg-
ing him with said offense, for the shooting and killing
of one Boss Hall.   His motions for a new trial and in
arrest of judgment having been overruled, defendant
appealed.

After the grand jury returned the indictment in
this case, Hon. A. H. Waller, the regular judge of said
court, was compelled on account of sickness to vacate
the bench, and the case was tried before Hon. E. W.
Hinton, a member of the Boone County Bar, who was
duly elected special judge.

The defendant, the deceased and nearly all the wit-
nesses on both sides were negroes.   The evidence for
the State tended to prove that on the 16th of June, 1906,
one Lewis Berry, a negro, gave a picnic near Deer
Park, Boone county, to which was invited the colored
population of the neighborhood. For the accommodation
and pleasure of the picnickers, and his own enrich-
ment, Berry erected dining and cooking booths and a
dancing platform upon the grounds and had for sale
various table delicacies and liquid refreshments.   The
picnic lasted all evening, and until after midnight.   At
ten o'clock, or thereabouts, the defendant raised a dis-
turbance at the dancing platform, and used some vile
and vigorous language in addressing those about 1 im.
Lewis Berry stepped up to him and told him to hush
and sit down, and the defendant replied, "You damn
son of a bitch, if you don't like that you don't have to

take it." Berry's wife had occasion to leave the cooking booth and get some meal to be used in connection with the fish which she was cooking, and she met the defendant outside, who struck her on the shoulder, and the two engaged in a little altercation. Soon afterwards the defendant left the grounds on his horse, Elwood Baker accompanying him, and went home. In the course of two or three hours, the defendant returned to the picnic grounds; going in through an opening in a fence, and riding up to a point within a few yards of the eating booth, he said, "I will kill all of you sons-of-bitches." He stopped his horse, drew a pistol and fired three shots, one of which took effect in the head of Boss Hall, who was standing quietly near the booth and in the act of lighting a cigar. The defendant jumped from his horse, and some one called to Lewis Berry and said, "He will kill you; run, run." Berry immediately made a dash for the woods, as did also Shannon Stark, but while fleeing two additional bullets fired from defendant's pistol struck and brought both men to the ground. When Berry fell, the defendant said, "I got you." Berry managed to get further into the woods, and was found next morning concealed under a brush pile, where he was bleeding and suffering from the wound which he had received. The State's evidence further tended to prove that the defendant fired five shots from his pistol, that no one else did any shooting, and that neither the deceased nor Berry nor Stark had any weapon at the time of the shooting. After the shooting, the defendant said, "I told you that I would get some son-of-a-bitch here to-night." The deceased was taken to Columbia and medical attention given him at the Parker Memorial Hospital until July 8, 1906, when he died from the effects of the bullet wound in his head. Dr. Walter McNabb Miller testified that he made a post-mortem examination, and found a bullet wound on the right side of the head of

the deceased, about one inch from the median line over the ear, which wound was one and one-half inches long and one inch wide, piercing the brain, and in the opinion of the witness said wound caused the death of the deceased.

The defendant's evidence tended to prove that he used some profane language at the dancing floor that night; that Lewis Berry told him to stop cursing, and that Berry's wife came up and began choking the defendant. That one Charles Vaughn pulled Mrs. Berry away, and Lewis Berry and one Dave Jordan began cutting at defendant. He further testified that he left the picnic grounds, rode home and went to sleep, and then returned to look for his hat which he said had been knocked off his head in the scuffle with Mrs. Berry. After riding into the grounds he saw Lewis Berry, who put his hand on his hip pocket as if to draw a pistol, and thereupon he, the defendant, drew his pistol and began shooting. He did not know that he had shot the deceased, nor know whom he did hit. He was unable to give any reason why Lewis Berry and Dave Jordan did not succeed in cutting him with their knives, except that somebody interfered. The defendant introduced some evidence to the effect that when Lewis Berry was found next morning, Berry asked the boys to handle him easy, as he was going to die, that he shook hands with them, told them good-bye, and said he did not know who shot him. Most of the witnesses for the defendant were his near relatives.

In rebuttal, the State introduced evidence to prove that Lewis Berry did not make the statement attributed to him by defendant's witnesses, and that neither Lewis Berry nor Dave Jordan made any assault upon defendant with knives; also that the defendant had his hat on when he returned to the picnic grounds and commenced shooting. It was also proved by the State

that the reputation of two of defendant's witnesses for truth and veracity was bad.

The point is made that the court erred in allowing Lewis Berry, over the objection of the defendant, to testify as to the nature of the wound he received and as to what he said and did following the shooting. Under the law as we understand it, all that occurred at the time and place of the shooting, which had reference thereto or connection therewith, was part of the *res gestae,* and was properly admitted in evidence upon that ground. [State v. Woodward, 191 Mo. 617; State v. Cavin, 199 Mo. 154; State v. Vaughan, 200 Mo. 1; State v. Spaugh, 200 Mo. 571.]

It is contended that the court erred in allowing the prosecuting attorney to ask a witness for the State if he knew Baker's (the defendant's) reputation for truth and veracity as an average negro. This question was objected to by the defendant upon the ground that his character was not in issue, and the objection was sustained. Defendant insists that the object of the question was to prejudice the jury against him, and that the prosecuting attorney should have been rebuked by the court for asking it, and, for failure so to do, committed reversible error. This occurred after Baker had testified as a witness in his own behalf, and he was then subject to impeachment by evidence of his general reputation for truth and morality the same as any other witness. [Sec. 2637, R. S. 1899; State v. Smith, 125 Mo. 2; State v. Weeden, 133 Mo. 70; State v. Dyer, 139 Mo. 199.] While the question propounded was not in proper form, the subject of the inquiry was a proper one, and the question was presumably asked in good faith and the rebuke of the attorney uncalled for.

A further contention is that the court erred in refusing to grant the defendant a new trial on account of prejudicial remarks by the prosecuting attorney. The remarks complained of were made by the prosecu-

ting attorney during his closing address to the jury, and were as follows: "The parties to this killing were negroes, and if you allow negroes to shoot each other, how long will it be until they are shooting you white men?" Upon objection by defendant to said remark, the court said to the prosecuting attorney, "Mr. Harris, it is improper for you to appeal to race prejudice, or refer to the race of the defendant. It must not be re-peated, you must stay in the record." It seems to us that this rebuke, made in most emphatic terms, was entirely sufficient, and the jury could not but have un-derstood that the court strongly disapproved of the remark. Besides, no exception was taken and saved at the time to the insufficiency of the rebuke by the court, and the point must, therefore, be considered as waived. [State v. Murphy, 201 Mo. 691.]

It is next contended that the court erred in allow-ing the jury to separate after their selection to try the cause, and that, upon the hearing of the defendant's motion for a new trial, the court should have required the State to show that there was no ground for preju-dice of defendant's cause on account of such separation. As supporting this charge, we are referred to the affi-davit of one Frank Dinwiddie, in which, however, there is not one word regarding the separation of the jury or of its conduct at any time. It states in substance that the affiant left at the residence of Allen Park, a mem-ber of the jury, a copy of the Columbia Daily Tribune, of date October 22, 1905, being a paper published at Columbia, and which contained a statement with refer-ence to the trial of defendant, also the names of the ju-rors selected to try the cause, among whom was one Al-len Park, and the names of the attorneys engaged in the trial; but the affiant does not even state that Park ever saw or read the paper. This affidavit is no proof whatever that the jury separated, or that Park or any other member of the jury was guilty of misconduct.

A final contention is that the verdict of the jury was the result of passion and prejudice. There is no merit whatever in this assumption. No one, unprejudiced, can read the evidence disclosed by the record in this case without being at once convinced that this was a deliberate and premeditated assault with intent to kill and murder Lewis Berry, or any other negro who might come within range of defendant's deadly aim; and although defendant shot at Berry with the intention of killing and murdering him, and killed Boss Hall, as charged in the indictment, he is equally as guilty as if he had killed Berry. [State v. Gilmore, 95 Mo. 554; State v. Clark, 147 Mo. 20; State v. Cavin, 199 Mo. 154.] In such case, the felonious intent follows the bullet, and the person committing the homicide is responsible for the result, although he may not in fact have intended to kill or injure the person whom he did kill.

Finding no reversible error in the record, we affirm the judgment and direct the sentence pronounced by the trial court to be executed. All concur.