THE STATE v. RAYMOND BATSON, Appellant.—96 S. W. (2d) 384.

Division Two, August 20, 1936.

*Freeman L. Martin* for appellant.

*Roy McKittrick*, Attorney General, *Wm. Orr Sawyers*, Assistant Attorney General, and *Max Wasserman* for respondent.

ELLISON, J.—The appellant, a negro, appeals as a poor person from a conviction of murder in the first degree in the Circuit Court of St. Louis County. He was charged by information with shooting and killing Dr. William Edward Poole, and the jury fixed the punishment at death. No brief has been filed here in his behalf. His motion for new trial in the court below complains: that there was no substantial evidence to support the verdict; of the giving and refusal of instructions; and of the overruling of appellant's challenge to one of the jury panel.

The appellant stood on his demurrer to the State's evidence and did not testify or call any witnesses in his behalf. The evidence for the State showed the following. About the middle of December, 1934, a misdemeanor case charging the appellant's wife, Luella Batson, with disturbance of the peace was pending in the court of Philip Rabenau, justice of the peace at Kirkwood for Bonhomme township,

St. Louis County. It seems she had been convicted and was having some difficulty in arranging for a recognizance in connection with her appeal. At any rate, Mr. John H. McNatt, first assistant prosecuting attorney of St. Louis County testified that he had a conversation with the appellant about two weeks later on December 28, 1934, sometime after eleven o'clock A. M., in the circuit court room of Judge McElhinney at Clayton, the county seat, during lulls or intermissions in the trial of another case in that court, in which conversation the appellant stated Justice Rabenau would not grant his wife an appeal in her case because she was unable to make bond. The prosecutor showed him a transcript of the proceedings in the case and directed his attention to a recognizance therein purporting to have been signed by him (the appellant) before Justice Rabenau. The appellant declared it was a forgery and left immediately.

Within about an hour he appeared at the door of the office of Justice Rabenau in Kirkwood with pistol in hand, and after repeating twice "you forged my name at Clayton," shot Rabenau four times in the back as the justice sat at his desk about four feet from the door, death resulting instantly. Dr. William Edward Poole, a dentist of Kirkwood, was on the other side of the room twelve feet away and in line with him was deputy Constable Jack Nece, who charged toward the appellant (but without drawing his revolver) whereupon the latter turned and fired at him. Nece lunged to one side and the bullet evidently must have struck Dr. Poole, as it was the only shot in his direction and the others were accounted for. The appellant shot once or twice more and backed out the door. Nece followed but did not fire his revolver until he was outside the office. They exchanged several shots, each receiving a wound, and the appellant fled to his home where the police by the use of a gas bomb forced him to surrender. He had on his person two pistols, one being the weapon used by him in the shooting, and a buckskin sack containing perhaps a hundred cartridges.

The foregoing account of the homicide shooting is taken from the testimony of Constable Nece. There were three other surviving persons in Justice Rabenau's office at the time: Miss Schmidt, a stenographer; George Booth, another justice of the peace of the township; and Richard James, marshal of Valley Park in the same township. Miss Schmidt was unable to give many details of the shooting. The testimony of Justice Booth and Marshal James was substantially in accord with that of Mr. Nece, except that James thought the appellant fired twice, instead of once, at Nece, when the latter first advanced toward him; and the witnesses did not agree upon the exact words the appellant used when he came to the office door and charged Justice Rabenau with having forged his name.

It will be remembered that the prosecution in this case was not

for the killing of Justice Rabenau, but for the killing of Dr. Poole. Nece testified that when he returned from his pursuit of the appellant to the justice's office Dr. Poole was lying or leaning prostrate with his head on a table, and appeared to be in great pain. His clothes had been parted and a perforation in his stomach could be seen just below the navel. Marshal James testified that the doctor groaned and that he tore his shirt open and saw a bullet wound right in the middle of his stomach. James called an ambulance. Dr. Poole died the next day, December 29. The information charges he died in the city of St. Louis (which is not in the county of St. Louis).

Dr. Thomas C. St. John, coroner's physician for the city of St. Louis, ·testified that he performed an autopsy on the body of Dr. Poole on December 31, 1934, at the Jewish Hospital morgue in St. Louis, and found what appeared to be a bullet wound ''just to the right of the mid-line, in the upper half of the belly.'' There was also an operative scar or wound about eight inches long in the mid-belly and an operative stab wound with a drain in the abdomen. These latter, he said, had been made by a surgeon in some operation. From his examination he concluded the cause of death was a massive collapse of the lungs, and contributing causes were shock and hemorrhage, pleura effusion and peritonitis. The lung collapse was caused by the bullet wound, in his opinion. No bullet was found. Dr. Louis L. Turreen, a coroner's physician of St. Louis County, attended the autopsy. He said the bullet wound passed through the large bowel of the transverse colon and through the stomach and diaphragm, penetrating the chest. In his opinion death was due to pulmonary collapse due to the bullet's penetrating the abdomen and chest. He stated the bullet emerged from the body.

Appellant's counsel recalled Prosecutor McNutt for further cross-examination and proved by him that on the occasion when he had the conversation with the appellant during the trial of a case in Judge McElhinney's court on the morning of December 28, the appellant contradicted one of the attorneys trying the case by speaking out loud, saying, ''That isn't true.'' Judge McElhinney reprimanded him and told him to be quiet, and he obeyed.

At the close of the State's case the appellant offered an instruction in the nature of a demurrer to the evidence, which the court refused. The appellant then rested.

■ I. From the foregoing it is apparent the appellant's assignment that the verdict was not supported by substantial evidence is groundless. But the motion for new trial also complains of the refusal of its instruction in the nature of a demurrer to the State's evidence, so we shall notice the specific assignments therein. One point made is that the State failed to prove Dr. Poole died within the ter-

ritorial jurisdiction of the trial court, that is to say, in St. Louis County, but did show, or tend to show, he died outside of that jurisdiction in the city of St. Louis, and that the information so alleges. This does not help the appellant. The prosecution in the county where the fatal wound was inflicted, was entirely proper. [Sec. 3380, R. S. 1929, Mo. Stat. Ann., p. 3075; State v. Blunt, 110 Mo. 322, 337 et seq., 19 S. W. 650, 654 et seq.; State v. May, 142 Mo. 135, 151, 43 S. W. 637, 641.]

The demurrer also contends the State's evidence fails to connect the appellant with the shooting of the deceased, or to show the bullet which struck deceased came from the appellant's pistol. This contention is entirely erroneous. The uncontradicted evidence shows the appellant shot in the direction of Dr. Poole; that the latter collapsed very soon afterward, and that the only other shots fired came from the revolver of Constable Nece, who did not use his weapon until after he had got out of the office and was pursuing the appellant in another direction.

It is also assigned that the State's evidence was insufficient to show the cause of Dr. Poole's death, in that no testimony was produced from the physician who first treated him after the shooting. It is true the State did not show what doctors attended Dr. Poole between the time of the shooting and his death, and did not produce them as witnesses or account for their absence, but it does not follow from this that there was no substantial evidence as to the cause of his death. Messrs. Nece and James testified he was shot in the stomach and the two coroner's physicians who performed the autopsy said that bullet would cause his death.

II. Assignment 3 in the motion for new trial charged generally that the court erred in giving the instructions asked by the State, and then copied them in full. But the assignment failed to state any reasons why the instructions were wrong, or to point out any errors therein. Under Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275), this is insufficient to present any question for appellate review. During the last eight years this has been ruled a number of times: State v. Bailey, 320 Mo. 271, 278, 8 S. W. (2d) 57, 60; State v. Shuls, 329 Mo. 245, 253, 44 S. W. (2d) 94, 97; State v. Fisher, 46 S. W. (2d) 555, 556; State v. Vigus, 66 S. W. (2d) 854, 856; State v. Shepard, 334 Mo. 423, 431, 67 S. W. (2d) 91, 95; State v. McGee, 336 Mo. 1082, 1103, 83 S. W. (2d) 98, 110.

III. The fourth assignment is that the court "erred in failing and neglecting to include the term 'reasonable doubt' in instructions numbered 2 and 3." Instruction No. 2, in part told the jury that while it devolved upon the State to prove the willfulness, deliberation, pre-

meditation and malice necessary to constitute murder in the first degree, yet these need not be proven by direct evidence, but might be deduced from all the facts and circumstances attending the killing, and if the jury could satisfactorily and reasonably infer their existence from all the evidence, they would be warranted in finding the defendant guilty of murder in the first degree. Appellant's point is that the law required the jury to find the existence of these elements of the crime beyond a reasonable doubt; and that it was error to tell them they could convict him of first degree murder if they could "satisfactorily and reasonably" infer the existence thereof, without further advising them such finding must be beyond a reasonable doubt.

The assignment is not good. In Instruction No. 1 the court told the jury if they convicted the appellant of murder in the first degree they must find beyond a reasonable doubt that he killed Dr. Poole willfully, deliberately, premeditatedly and of his malice aforethought. And Instruction No. 4 on the presumption of innocence, applying to the entire case, declared they could not convict him "unless the State has proven his guilt to your satisfaction beyond a reasonable doubt." This was sufficient, under many of our decisions; it was unnecessary to repeat the admonition concerning reasonable doubt in each particular instruction. [9 West's Mo. Dig., sec. 806(3); State v. Buckner, 335 Mo. 229, 72 S. W. (2d) 73, 76.]

The same criticism of Instruction No. 3 is not well founded for the same reason. That instruction informed the jury they could not find the appellant guilty of murder in the first degree unless they found he killed Dr. Poole willfully, deliberately, premeditatedly, and with malice aforethought as described in the other instructions.

IV. But the eighth assignment complains of further error in Instruction No. 3, on a ground that merits consideration. The instruction, summarized, says that if the jury find the appellant did willfully, deliberately, premeditatedly, and with malice aforethought, attempt to shoot and kill Justice Rabenau, and in said attempt shot and killed Dr. Poole, then any such willfulness, deliberation, premeditation and malice which they find existed in the appellant in connection with said attempt to kill Rabenau (if any) must be attributed to him in the killing of Poole, if it be found he did kill Poole. The error assigned is that there was no evidence upon which to base this part of the instruction because all the evidence, without contradiction, showed the appellant was shooting in self-defense at Constable Nece when he shot Poole.

Appellant is wrong in saying all the evidence shows he shot at Nece in self-defense; on the contrary, there is no evidence at all that he was acting in self-defense. He had just shot Justice Rabenau

four times brutally and without provocation, in the presence of Constable Nece who thereupon charged toward him. Then he turned on Nece and shot at him. Nece did not have his revolver out at that time, and was acting as any officer, or even private citizen, would have been authorized to do in the circumstances, a felony having been committed by the appellant in his presence. It was obvious that Nece was attempting to arrest him, and the appellant was not entitled to further notice of that fact. In these circumstances he cannot claim he acted in self-defense. [State v. Noland (Mo. Div. 2), 229 S. W. 198, 199 (2).]

But while it is not true the appellant was acting in self-defense when he fired the shot that hit Dr. Poole, yet it is true that all the evidence shows the shot was directed at Nece, and not Rabenau. He had already shot Justice Rabenau in the back four times at close range. Nece was in another part of the room twelve feet away, and when the appellant turned and fired at him the bullet could not possibly have been intended for Rabenau. In these circumstances was it proper to tell the jury if they believed the appellant willfully, deliberately, premeditatedly and maliciously attempted to shoot and kill *Rabenau*, and in that attempt shot and killed Poole, the law would attach the aforesaid willfulness, deliberation, premeditation and malice to the killing of Poole? We think not unless it can be said the shooting at Nece was a part of the attempt to kill Rabenau within the meaning of the applicable rule of law, and such is not our understanding of the rule.

In 13 Ruling Case Law, section 50, page 745, the law is thus laid down: "The fact that the homicidal act was intended to compass the death of another person does not in any measure relieve the slayer of criminal responsibility. He is guilty or innocent exactly as though the fatal act had caused the death of the person intended to be killed. The intent is transferred to the person whose death has been caused." [Annotations cited on the point are 18 A. L. R. 1917: 63 L. R. A. 660; 90 Am. St. Rep. 582.]

In 29 Corpus Juris, section 67, page 1092, the doctrine of the cases cited is stated as follows: "Since legal malice does not require ill will toward the victim the crime may be murder, and murder, although the person killed was not the one whom defendant intended to kill, as where the victim is mistaken for another, or where one shooting at another kills a bystander or third person coming within range, or one partakes of poison which accused intended for another, or receives a blow intended for another."

As gathered from these sources it seems clear that the act with respect to which the felonious intent will be "transferred" from the object of the accused's design to the victim, is the homicidal act directed at the former and resulting in the death of the latter, and

not some antecedent act. The rule contemplates only the one felonious act, the result of which is unintended. The illustration most frequently given is taken from Blackstone where he says it is murder if one shoots at A and misses *him*, but kills B. [4 Blackstone's Commentaries, p. 201.] This is the doctrine which has always been followed by the Missouri decisions. As some of the cases very expressively say, "the intention follows the bullet." [See State v. Payton, 90 Mo. 220, 227 (3), 2 S. W. 394, 396; State v. Montgomery, 91 Mo. 52, 53, 3 S. W. 379, 380; State v. Gilmore, 95 Mo. 554, 565 (7), 8 S. W. 359, 364; State v. Renfrow, 111 Mo. 589, 597 (3), 20 S. W. 299, 301; State v. Pollard, 139 Mo. 220, 228 (5), 40 S. W. 949, 952; State v. Clark, 147 Mo. 20, 28, 47 S. W. 886, 887; State v. Cavin, 199 Mo. 154, 158 (1), 97 S. W. 573, 574; State v. Mulhall, 199 Mo. 202, 218, 97 S. W. 583, 587, 7 L. R. A. (N. S.) 630, 8 Ann. Cas. 781; State v. Baker, 209 Mo. 444, 452 (6), 108 S. W. 6, 9; State v. Solan (Mo. Div. 2), 207 S. W. 782, 783 (2); State v. Baugh (Mo. Div. 2), 217 S. W. 277, 281 (6).]

It has been suggested during our consideration of the case the appellant may have intended from the start to kill both Constable Nece and Justice Rabenau: or that he may not have known he had already killed Rabenau, and that when he turned and shot at Nece he did it to prevent Nece's interference with his further plan to dispatch Rabenau. There really is no evidence to support such theories. The appellant's exclamation when he appeared at the office door with pistol in hand, "You forged my name at Clayton," could have been directed only at Rabenau. He did not turn toward Nece until the latter advanced toward him; he then had already shot Rabenau four times in a vital part at close range, and he fled without further demonstration against Rabenau.

But granting that these suggested theories find substantial support in the evidence. Even if it be true that the appellant intended to kill both Rabenau and Nece, the undisputed fact remains that he was shooting at Nece, not Rabenau, when he killed Poole. And even if he shot at Nece to prevent interference with his further plan of making sure of killing Rabenau, the shot was not of itself a homicidal act against Rabenau, but was only antecedent or preparatory thereto. Keeping in mind that the instruction hypothesizes the shot as a deliberate attempt upon the life of Rabenau, we must measure it accordingly and disregard the appellant's felonious intent against Nece in firing it.

If the appellant had not succeeded in killing Rabenau and were being prosecuted for the attempted murder under Section 4442, Revised Statutes 1929 (Mo. Stat. Ann., p. 3048), perhaps (though we do not so hold) his shooting at Nece would be an "act toward the commission of such offense" within the meaning of that section:

306

Words and Phrases, First, Second, Third and Fourth Series, "attempt to commit crime;" Commonwealth v. Egan, 190 Pa. 10, 22, 42 Atl. 374, 377 (5). But under that statute the criminal act may be an antecedent act moving directly (but ineffectually) toward the commission of the intended crime; and the punishment cannot exceed imprisonment in the penitentiary for fifteen years; whereas, under the rule here involved the criminal act must be a consummating homicidal act which miscarries only in that it results in the death of an unintended victim, though it may also compass the death of the person sought to be slain; and the punishment may be death.

Another theory may come to mind. We have a statute, Section 3982, Revised Statutes 1929 (Mo. Stat. Ann., p. 2778), which declares that every willful, deliberate and premeditated killing, and every homicide committed in the perpetration or attempted perpetration of certain particular felonies—arson, rape, robbery, burglary or mayhem—shall be deemed murder in the first degree. That statute cannot apply to this case because felonious assault and homicide are not among the felonies designated therein: in other words the statute does not make it murder in the first degree to commit one homicide in the perpetration or attempted perpetration of another. But it is said that independent of the statute the commission of a homicide while engaged in the perpetration of any felony was and is murder at common law; 29 C. J., sec. 70, p. 1097; State v. Robinett (Mo. Div. 2), 279 S. W. 696, 698 (2); State v. Glover, 330 Mo. 709, 718, 50 S. W. (2d) 1049, 1052, 87 A. L. R. 400, 406; State v Lindsey, 333 Mo. 139, 148, 62 S. W. (2d) 420, 424; State v. Wright, 337 Mo. 441, 85 S. W. (2d) 7, 10; and it is further said a homicide thus committed will be murder "although it does not take place until after the felony itself has been technically completed, if the homicide is committed within the res gestae of the felony," 29 C. J., sec. 82, p. 1107; State v. Messino, 325 Mo. 743, 765, 30 S. W. (2d) 750, 759, and is an emanation thereof, State v. Glover, 330 Mo. l. c. 719, 50 S. W. (2d) l. c. 1053, 87 A. L. R. l. c. 407. There is no doubt about the fact that the act of the appellant in firing at Nece was a part of his general homicidal foray, and of the res gestae in the shooting of Rabenau. Can the giving of Instruction No. 3 be vindicated on this theory?

We do not think so for two reasons. First, the instruction is not drawn on that theory. Second, Section 3983, Revised Statutes 1929 (Mo. Stat. Ann., p. 2786), provides all kinds of murder at common law other than those covered by Section 3982, shall be murder in the second degree. So even if it be conceded the killing of Poole in the general attempt to kill Rabenau was murder at common law it is not for that reason murder in the first degree under our statute: State v. Robinett, 279 S. W. l. c. 700; State v. Lindsey, 333 Mo. l. c. 149,

62 S. W. (2d) l. c. 425; State v. Wright, 337 Mo. 441, 85 S. W. (2d) l. c. 10; and the facts on this theory would not support an instruction on murder in the first degree.

Was the giving of the instruction prejudicial error? It is true the evidence shows a homicidal intent in the firing of the shot, and that the death of a human being resulted. And if the instruction had correctly submitted the case on the hypothesis that the appellant was willfully, deliberately, premeditatedly and maliciously attempting to kill *Constable Nece* when he killed Dr. Poole, the jury would have been warranted in finding him guilty of first degree murder thereunder. But the question here is whether it was prejudicial to the appellant for the instruction as given to tell the jury they could find him guilty of first degree murder for the killing of Dr. Poole if they found he was attempting to murder Rabenau at the time, when all the evidence shows he was not shooting at Rabenau but at Nece.

State v. Flathers, 57 S. D. 320, 232 N. W. 51, 72 A. L. R. 150, may be thought to bear on the point. In that case a rejected suitor shot at and wounded his sweetheart and killed F, her escort. Being prosecuted for the murder of the latter the indictment charged in one count that the defendant intentionally and deliberately killed F, and in another that he killed F in a felonious attempt to murder the girl. It seems the instructions authorized a conviction on either theory and that the jury returned a general verdict of guilty. On appeal the defendant complained that part of the jurors may have found him guilty on one theory and part on the other without unanimity of view on either count of the indictment. The South Dakota Supreme Court held there was only one crime, the murder of F, and that the conviction must stand, by whichever route the several jurors may have reached the conclusion agreed upon. But we think the case is not in point, because there was evidence in it to support either theory, whereas in the instant case there was no evidence that the appellant was attempting to kill Rabenau (as the instruction hypothesized) when he killed Poole.

On the other hand, in State v. Shanley, 20 S. D. 18, 23, 104 N. W. 522, 524, where an indictment charged the defendant with shooting at S with intent to kill him, and the court instructed the jury they might convict the defendant if they found he shot at S with intent to kill S *or any other person*, it was held reversible error. Likewise, it is the law that when an accused shoots at one person and kills another, not only is his felonious intent attached to the latter killing, but any right of self-defense he may have had against the person shot at also is preserved to him. [State v. Stallings, 326 Mo. 1037, 1044, 33 S. W. (2d) 914, 916.] In State v. Fielder, 330 Mo. 747, 751, 50 S. W. (2d) 1031, the defendant was under prosecution for the murder of T. He adduced evidence tending to show he was shooting

at H and L in self-defense and unintentionally killed T. The court instructed the jury that if they found the defendant believed and had reasonable cause to believe *T* was about to do him great bodily harm, and so believing shot and killed him, they should acquit; but no instruction was given with reference to the appellant's right to act in self-defense against the assault of H. and L. This was held reversible error.

In the instant case to convict the appellant of first degree murder for the killing of Dr. Poole, it devolved upon the State to prove beyond a reasonable doubt that he committed the homicide willfully, deliberately, premeditatedly and of his malice aforethought. To establish this it was necessary to show either that such felonious intent existed as against Poole, or against someone at whom he was shooting when he hit and killed Poole. The law will not attach the intent to the act of killing Poole merely because the appellant harbored it against another person present (Rabenau) at whom he was not then shooting, even though he intended by a separate act immediately thereafter to kill that other person. The instruction as given would lead a jury to believe that if the shot which killed Dr. Poole was fired as a part of the appellant's general design to kill Rabenau, they could convict him of first degree murder. The uncontradicted evidence shows a brutal unprovoked fatal assault upon Rabenau— more aggravated even than the one upon Nece. The instruction was either based upon a wrong theory of the law, or was unsupported by the facts, and the giving thereof was prejudicial to the substantial rights of the appellant and necessitates a reversal and remanding of the case.

V. There are several other assignments in the motion for new trial, but we need refer only to three of them.

It is alleged the instructions were confusing and misleading because the court failed to tell the jury that the appellant was only on trial for the killing of Dr. Poole, and not the killing of Rabenau. If the appellant desired an instruction on this point he should have asked for it, as it was not the character of instruction which the court was required to give on the law of the case under Section 3681 (4), Revised Statutes 1929 (Mo. Stat. Ann., p. 3227). Furthermore, the instructions given plainly disclosed that the defendant was being tried for the killing of Dr. Poole, only.

▮ Again, it is asserted the court erred in failing to instruct the jury on second degree murder and manslaughter, and on the law of self-defense. As we have already held, the appellant was not entitled to an instruction on self-defense; and there was no evidence justifying an instruction on manslaughter since it does not appear that any violence to the person was offered the appellant by the deceased

Poole, or by Constable Nece, except as the latter acted within the line of his duty as a peace officer. [State v. Bongard, 330 Mo. 805, 813, 51 S. W. (2d) 84, 88; State v. Albright, 144 Mo. 638, 652, 46 S. W. 620, 624.]

With reference to an instruction on second degree murder. The jury had the right to determine by their verdict whether the appellant willfully, deliberately, premeditatedly and maliciously killed Dr. Poole, or whether he shot Poole in a like deliberate attempt to kill Constable Nece. They might have found against the State on both these issues, and yet have concluded he killed Poole as a part of the *res gestae* in the felonious killing of Justice Rabenau, which, as we have attempted to show in paragraph IV, would have made him guilty of murder in the second degree under the common law and Section 3983, Revised Statutes 1929 (Mo. Stat. Ann., p. 2786). We think, therefore, that on a retrial of the case an instruction on murder in the second degree should be given if the evidence is substantially like it appears in this record.

VI. The record shows that the appellant was prosecuted originally by indictment. He filed a motion to quash it, assigning certain errors in the selection of the grand jury, and complaining also that the indictment was not signed by the prosecuting attorney as required by Section 3540, Revised Statutes 1929 (Mo. Stat. Ann., p. 3144). The court overruled the motion but nevertheless two days later by leave of court the prosecuting attorney substituted an information for the indictment.

Section 3503, Revised Statutes 1929 (Mo. Stat. Ann., p. 3124), provides no information shall be filed against any person charging a felony until he shall have been accorded a preliminary hearing; provided that the accused may waive such preliminary examination, and an information may be substituted for an indictment when authorized by Section 3564, Revised Statutes 1929 (Mo. Stat. Ann., p. 3169). Section 3564 allows the substitution of an information for an indictment where the latter has been held insufficient either as to form or substance. The indictment in this case was not held insufficient. The motion to quash it was overruled. But the record does not show that the appellant objected or excepted and no assignment on that ground is made in the motion for new trial. On the contrary it appears the appellant entered his plea and went to trial on the information without objection. He has therefore waived his right to a preliminary hearing, and we think also to the erroneous substitution of the information for the indictment. These facts are not like those in State v. Barr, 326 Mo. 1095, 1101, 34 S. W. (2d) 477, 479, where it was held the erroneous substitution of an information for an indictment was error on the face of the record proper and need not be preserved

in the bill of exceptions. But in that case the opinion goes on at great length to show the substitution was made without leave of court.

For the reasons given the judgment is reversed and the cause remanded. All concur.