THE STATE v. RAYMOND BATSON, Appellant.—116 S. W. (2d) 35.

Division Two, May 3, 1938.

*Roy McKittrick*, Attorney General, *S. V. Medling* and *Wm. Orr Sawyers*, Assistant Attorneys General, for respondent.

WESTHUES, C.—Appellant was convicted in the Circuit Court of St. Louis County, Missouri, of murder in the first degree and

sentenced to suffer the extreme penalty. He appealed. Appellant filed no brief in this court. In his motion for new trial we find only two assignments of error preserved for our review. They are, that the evidence was insufficient to sustain the verdict and that the verdict was not in proper form. Appellant was charged with having murdered Judge Phillip Rabenau, a Justice of the Peace of St. Louis County, on December 28, 1934. At the same time Dr. William Edward Poole was shot by appellant. Appellant was tried upon a charge of murder for the killing of Dr. Poole and sentenced to death. That judgment was reversed by this court and the case remanded for new trial. [See State v. Batson, 339 Mo. 298, 96 S. W. (2d) 384.] In view of the full statement of facts appearing in that opinion it will not be necessary to make a detailed statement in this case.

 Appellant had been indirectly involved in a number of minor cases in Judge Rabenau's court. In one case an appeal was pending in the circuit court before Judge McElhinney. Appellant was in the circuit courtroom on the morning of December 28, and while discussing the case pending there it was mentioned that appellant had signed a recognizance in that case before Judge Rabenau. Appellant immediately declared that this signature was a forgery and left the courtroom. Shortly after twelve o'clock of that day appellant went to the office of Judge Rabenau, where the following transpired, according to the State's evidence: A number of witnesses, who were in the office at the time, testified that Judge Rabenau was sitting about four or five feet from the door, with his back to it when appellant appeared at the door and said: "You forged my name at Clayton," and immediately began firing at the judge with a revolver. Judge Rabenau was shot in the back four times and died in his chair almost instantaneously. A deputy constable, named Jack Nece, advanced toward appellant, whereupon appellant fired at Nece. The bullet struck Dr. Poole in the abdomen causing his death. Appellant then departed and was later taken in custody and charged with double murder. It is evident that no citation of authority or argument is necessary to sustain the contention that the evidence was amply sufficient to sustain the verdict of murder in the first degree.

 Appellant's defense was insanity and self-defense. Appellant made only a weak attempt to show insanity. His own evidence while upon the witness stand does not indicate that he was insane. The State in rebuttal introduced substantial evidence that appellant was sane. The jury found against appellant upon this issue and we are bound by that finding.

 Appellant's own evidence was all that was introduced in support of his plea of self-defense. Appellant testified that he went to the office of Judge Rabenau for the purpose of discussing with him the question of how appellant's name happened to appear upon the

452

recognizance; that when he entered the door of the judge's office the following occurred:

"Q. I am saying now, who spoke first when you got there? A.. I just walked in and said, 'Good afternoon, gentlemen,' I says, 'Judge, you forged my name on some papers that I found over there in Clayton.'

"Q. You said that to the Judge, did you? A. Yes, sir.

"Q. What did he say? A. Well, he turned around and as has been testified, he says, 'You are crazy, you don't know what you are talking about.'

"Q. Then what did you say? A. Well, I said, 'Judge, this is a more serious matter than that, I feel like quite an injustice has been done me,' and by that time he was very tempermental and began to redden up, and he said, 'Get him, Jack,' and a shot was fired, and I was struck here, and a bullet is up in there now.

"Q. You mean the first shot was fired, somebody shot you in the arm? A. Yes, sir.

"Q. Whereabouts did they shoot you? A. In the arm.

"Q. And the bullet is in there now? A. Yes, sir. . . .

"Q. After Jack Nece shot you in the left arm near the elbow, then what did you do? A. Well, everything went blank to me, and then it seemed something spoke to me and says, 'Shoot, you are going to get killed,' and I just lost all my sense and did the best I could under the circumstances, and fortunately enough to be here to testify what happened."

Appellant admitted he went to the office with a gun in his hand and another in his pocket. He stated that he had thus armed himself because he knew the judge and the officers connected with the justice court bore ill feeling toward him and had threatened to get him. For that reason he went prepared to defend himself in case it was necessary. Aside from the fact that the overwhelming weight of the evidence was on the side of the State, the circumstances surrounding the shooting seem to be in harmony with the State's theory and inconsistent with appellant's theory. The jury was authorized to find that the murder was deliberate, and the evidence justified the extreme penalty.

■ The verdict of the jury read as follows:

"We, the jury, find the defendant guilty of Murder in the First Degree, as charged in the information, and assess his punishment at death.

"ROBERT M. WOODWORTH,
"Foreman."

The verdict is in proper form, responsive to the charge and the evidence, and is sufficient. Appellant contends that there was an amended information filed, and the verdict should have been re-

sponsive to that amended information. It was not necessary for the verdict to refer to an amended information because the amended information was the only one before the court in the trial of the case, and of course the verdict of the jury, when it referred to the charge in the information, meant the amended information upon which the appellant was tried.

It is contended in the State's brief that only the record proper is before this court for review because appellant failed to except to the overruling of the motion for new trial. In the case of State v. Wolzenski, 340 Mo. 1181, 105 S. W. (2d) 905, l. c. 907, this court en banc held that failure to except to the overruling the motion for new trial does not preclude a review on the merits. That case settled the question of procedure upon this point and overruled prior cases holding to the contrary. Appellant was ably represented by counsel, as evidenced by the opinion in the former case. His rights were well protected during the course of the trial and therefore the judgment, or the verdict herein, convicting appellant of murder in the first degree and inflicting capital punishment, is hereby affirmed. For the reasons stated in the *per curiam* in State v. Brown, 342 Mo. 53, 112 S. W. (2d) 568, the cause is remanded to the trial court with directions to have the appellant brought before it, and to impose a sentence of death by lethal gas in accordance with the provisions of Laws of Missouri, 1937, pages 222, 223. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.