J-E03006-21
J-E03007-21

2023 PA Super 31

| | | |
|---|---|---|
| GEORGE ROGERS, ADMINISTRATOR OF THE ESTATE OF JOSHUA ROGERS | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| LLOYD THOMAS, HAYDEN THOMAS AND/OR THE OUTDOORSMAN INC. | : : | No. 1915 MDA 2018 |

Appeal from the Judgment Entered November 21, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2016-1244


| | | |
|---|---|---|
| SUZETTE BENET, ADMINISTRATOR OF THE ESTATE OF GILBERTO ALVAREZ | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| LLOYD THOMAS, HAYDEN THOMAS AND/OR THE OUTDOORSMAN INC. | : : | No. 1916 MDA 2018 |

Appeal from the Judgment Entered November 21, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2016-00869


BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., OLSON, J., STABILE, J., KUNSELMAN, J., NICHOLS, J., KING, J., and McCAFFERY, J.

CONCURRING OPINION BY KUNSELMAN, J.: **FILED: MARCH 2, 2023**

I agree with the Majority that the Estates are not entitled to a new trial. However, I disagree with its analysis to the extent that it holds that the crime of voluntary manslaughter conclusively establishes two elements of the tort of negligence — the existence of a duty and a breach of that duty.  I do not

believe the intentional action and mental state required to prove voluntary manslaughter establish any of the elements of negligence. Therefore, I do not join Parts III.A and III.B, of the Majority Opinion; I join the remainder of the Opinion, and I concur in the result.

The operative complaints in these two cases alleged liability through wrongful death and survival actions under a theory of negligence. The complaints lump all the defendants together and allege that all three acted carelessly. Because this is the only basis the Estates allege for liability, they are limited to only a negligence cause of action. Under our rules of civil procedure, plaintiffs are required to set forth each of their causes of action in a separate count, so defendants can respond accordingly. *See* Pa.R.C.P. 1020.[1]

As the cases proceeded, the Estate of George Rogers moved for partial summary judgment against all defendants, claiming that Defendant Lloyd Thomas' conviction for voluntary manslaughter conclusively established liability for negligence, as a matter or law. Senior Judge Peter O'Brien from

---

[1] Judge Terry Nealon of Lackawanna County sustained preliminary objections to the Complaint filed by the Estate of George Rogers on the basis that plaintiffs grouped all defendants under one count and did not separate the theories of liability against each. *See* Trial Court Order, 5/10/13. The order allowed plaintiffs to file an amended complaint to correct this error. *Id*. at ¶5. We could not find a subsequent amended complaint in the record, so it is unclear whether the Estates ever filed one. The Complaint filed by the Estate of Gilberto Alvarez in Luzerne County alleges virtually identical claims against the same defendants, and similarly groups all allegations together under one cause of action for negligence. As the Majority notes, both Complaints were later transferred and consolidated for trial in Susquehanna County. *See* Majority at 5.

Lackawanna County granted partial summary judgment, only as to Defendant Lloyd Thomas, agreeing that Lloyd's criminal conviction barred him from challenging the intent of his actions in the civil case. Trial Court Opinion, 10/1/14. After the case was transferred to Susquehanna County, the trial court there adopted Judge O'Brien's ruling under the coordinate-jurisdiction rule.

The case proceeded to trial, and the jury slip presented the question of whether each of the defendants[2] was negligent, and whether the decedents who Lloyd shot on that fatal day, were also negligent. As the Majority noted, the jury found the defendants not negligent and decedents 100% negligent. The Estates then appealed to this Court.

In their first two issues, the Estates argue that the trial court erred with respect to negligence and comparative negligence. First, they claim that the trial court should have instructed the jury to conclude that Lloyd was negligent based on his conviction for voluntary manslaughter. Second, they claim that the trial court should not have allowed the defendants to present evidence of comparative negligence, because any comparative negligence of a plaintiff is not a factor when a defendant acts with intent to harm. The Majority rejects both claims and affirms the judgment for the defendants, which I agree is the correct result.

_____

[2] The only Defendants on the verdict slip were Lloyd and Outdoorsmen, Inc.; judgment was entered in favor of Defendant Hayden as a matter of law before the case was submitted to the jury.

However, I disagree with the analysis. The Majority agrees that Lloyd acted negligently and equates a criminal conviction for voluntary manslaughter with two of the elements of a civil claim for negligence. In doing so, the Majority conflates the separate legal bases underlying intentional and negligent torts.

The fundamental basis of tort liability is divided into three types, because every case in which civil liability has been imposed has rested upon one of three distinct grounds for imposing it. These bases for liability are negligence, intentional torts, and strict liability. ***See Monroe v. CBH20, LP***, ___ A.3d ____, ____, 2022 PA Super 197, 2022 WL 17087072, at *8 (Pa. Super. 2022) (*en banc*) (citing PROSSER & KEETON ON TORTS, § 7 at 32 (5th ed. 1984)). Each of these three doctrines imposes liability based on the state of mind of the actor. For negligence, the actor does not intend the harm from his actions but instead acts carelessly. For intentional torts, the actor intends "to bring about a result which will invade the interests of another in a way that the law does not sanction." Prosser, THE LAW OF TORTS, § 8 at 31 (4th ed. 1971). For strict liability, the actor's state of mind is irrelevant; liability is imposed merely for undertaking an extremely risky or ultrahazardous activity that causes harm to another.

With those theories in mind, it becomes clear that the crime of voluntary manslaughter equates to an intentional tort, because one who commits such a crime has acted with intent to bring about the result of shooting the victim.

Intentionally shooting people invades their bodily "interests in a way that the law does not sanction." *Id.* It creates the intentional tort of battery.

> Battery is defined by law as harmful or offensive contact with the person of another. A "battery" is an intentional offensive bodily contact. More technically, "battery" is defined as an actor's harmful or offensive contact with another person, resulting from the actor's act, which is committed with the intent to cause the plaintiff or a third person to suffer such a contact . . . Thus, the notion of battery includes an act that impinges upon an individual's sense of physical dignity or inviolability, such as occurs when a defendant throws a substance, such as water, or sets a dog upon the plaintiff even though the defendant and the plaintiff have not physically touched each other.

1 Summ. Pa. Jur. 2d Torts § 11:8 (2d ed.) [3]

"The intent required [for battery] is only the intent to bring about the contact; and given that, liablity will depend on whether there is a privilege, because of the plaintiff's individual consent, or otherwise." Prosser § 8 at 37.

In fact, the tort of battery is the classic example to which the doctrine of transferred *intent* applies. "If the defendant shoots . . . at A, intending to

---

[3] Voluntary manslaughter may also equate to the intentional tort of assault, if the victims were in fear of a battery or were aware that a battery was imminent. "An assault is an intentional attempt by force to do injury to the person of another. An "assault" occurs when (1) a person acts without privilege, intending to cause harmful or offensive bodily contact upon another or to put another in reasonable and immediate apprehension of harmful or offensive contact; and (2) the action does cause such an apprehension. In other words, an assault is an act intended to put another person in reasonable apprehension of an immediate battery, which act succeeds in causing an apprehension of that battery." 1 Summ. Pa. Jur. 2d Torts § 11:1 (2d ed.)

wound or kill him, and unfortunately hits B instead, he is held liable to B for ***an intentional tort***." ***Id.*** at 32 (emphasis added). "The intent to commit a battery upon A is pieced together with the resulting injury to B; it [(the intent)] is 'transferred' from A to B." ***Id.*** "The intention follows the bullet." ***Id.*** (quoting ***State v. Batson***, 96 S.W.2d 384, 389 (Mo. 1936)). The doctrine of transferred intent only applies when the actor intends to contact one person but misses and hits another person. Clearly under Professor Prosser's hypothetical, if an actor shoots A outright, then he is liable to A for his intentional battery. The actor is not liable for negligence.

In Pennsylvania, the crime of voluntary manslaughter involves an actor who shoots someone intentionally. In such cases, the actor thinks he is justified in the killing, but the basis for the justification is unreasonable.[4] For example, if an actor shoots someone in self-defense, because he thinks the victim is going to shoot him first, but it later turns out that the victim was

_____

[4] The relevant section of the Crimes Code provides:

> A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503(b). The elements of this crime are (1) an intentional killing (2) "committed as a result of an unreasonable belief in the need for deadly force in self-defense." ***Commonwealth v. Washington***, 692 A.2d 1024, 1029 (Pa. 1997) (citing ***Commonwealth v. Mehmeti***, 462 A.2d 657, 661 (Pa. 1983), and ***Commonwealth v. McNeil***, 439 A.2d 664, 669 (Pa. 1981)).

unarmed, that is voluntary manslaughter. Notably, the privilege of self-defense is available to claims for the intentional torts of assault and battery, but not for claims of negligence. ***See id.*** § 16 at 98-99.

"The privilege to act in self-defense arises, not only where there is real danger, but also where there is a reasonable belief that it exists." ***Id.*** § 19 at 109. "The belief must, however, be one which a reasonable man would have entertained under the circumstances." ***Id.*** It "is not enough that [the defendant] really believes that he is about to be attacked, unless he has some reasonable ground for the belief . . . the issue of what was reasonable . . . is frequently one for the jury . . . ." ***Id.***

Here, Lloyd claimed he shot the decedents in self-defense, but the jury found that this belief was unreasonable. This finding negated his privilege of self-defense. In the absence of any privilege, Lloyd intended to contact his victims with the bullets; thus, he was liable to them for batteries.

In sum, the crime of voluntary manslaughter equates to the intentional tort of battery. Compare that crime with involuntary manslaughter, where the actor does not intend to shot the victim, but undertakes a reckless or grossly negligent act that accidentally kills the victim. The crime of involuntary manslaughter equates to the tort of negligence.[5]

---

[5] Notably, the state of mind of the actor for this crime is a higher degree of negligence, *i.e.*, recklessness or gross negligence, which may support a claim for punitive damages, but it still equates to a civil cause of action for negligence. It is not an intentional tort or strict liability.

In this case, the parties, the trial court, and the Majority assume that the Estates alleged the correct theory of liability in their complaints against Lloyd. Hence, they begin their analysis with a faulty premise. The Majority's analysis regarding the collateral estoppel effect of a criminal conviction on the civil claim for negligence would be correct if Lloyd was convicted of involuntary manslaughter. **See** Majority at 10-20. However, that was not the case here.

Nonetheless, any errors that resulted from the applying negligence concepts to this case are irrelevant, because the result is the same: Lloyd is not liable to the Estates for negligence. Lloyd did not act negligently when he shot at the decedents; his conviction for voluntary manslaughter did not establish a civil claim for negligence, as a matter of law. Instead, Lloyd's criminal conviction established the intentional tort of battery, as a matter of law. **See** Prosser, **supra**. However, the Estates' alleged no cause of action for battery.[6] For this reason, the trial court did not err when it failed to

---

[6] I understand why the Estates attempted to frame this as a claim for negligence. No doubt they hoped that the defendants' insurance would cover any damages they sustained. Such insurance policies typically do not cover damages caused by intentional acts, and most defendants do not have sufficient personal assets to pay a civil judgment entered against them. Thus, if the Estates win on an intentional tort claim, they may not be able to collect on the judgment. Yet, calling an action "negligence" does not make it so. Indeed, like the trial court here, other courts have found that a conviction for voluntary manslaughter conclusively establishes a defendant's **intent**, for purposes of a subsequent civil action. **See, e.g.**, **Baber v. Fortner by Poe**, 412 S.E.2d 814, 822 (W. Va. 1991) (concluding, in the context of an insurance claim, that the adjudication of a killing which results in a voluntary manslaughter conviction conclusively establishes the intentional nature of that same act for the purposes of any subsequent civil proceeding). A conviction
*(Footnote Continued Next Page)*

instruct the jury that Lloyd was negligent, and therefore liable to the Estates for his actions. The jury reached the correct result, *i.e.*, that Lloyd was not negligent. Instead, Lloyd was an intentional tortfeasor. Because the Estates' first issue has no merit, I concur with the Majority that no appellate relief is due.

Turning to the Estates' second issue involving comparative negligence, I start by separating the claims against Lloyd and those against the other defendants, specifically the Outdoorsmen, Inc.[7] With respect to Lloyd, I agree with the Estates' argument that comparative negligence does not apply to an intentional act. **See, e.g.**, **Hairston v. Allen**, 153 A.3d 999, 1004 (Pa. Super. 2016) ("Importantly, [the Comparative Negligence Act (now the Fair Share Act)] specifically addresses comparative negligence and applies only in actions to recover damages for negligence. Here, [the actor] was alleged an intentional tortfeasor, and [the victim] was alleged a negligent tortfeasor. Therefore, arguably [the law regarding comparative fault] should not even apply in this case.").[8]

---

for voluntary manslaughter, however, does not conclusively establish negligence.

[7] As noted above, the trial court granted summary judgment against Hayden in the Rogers Estate case and a nonsuit against Hayden in the Alvarez Estate case. Thus, the only remaining defendant was Outdoorsmen, Inc.

[8] Returning to Professor Prosser: "The ordinary contributory negligence of the plaintiff is to be set over against the ordinary negligence of the defendant, to bar the action. But where the defendant's conduct is actually intended to

*(Footnote Continued Next Page)*

The jury should not have considered the negligence of the decedents in evaluating the liability of Lloyd. However, the error was harmless, again, because the Estates did not allege an intentional tort against Lloyd. The only cause of action they alleged in their Complaints was for negligence. For this reason, I agree with the Majority that no relief is due with respect to the action against Lloyd.

With respect to Outdoorsmen, Inc., comparative fault of the decedents was a proper consideration for the jury. The cause of action against this defendant sounded in negligence. In their Answer and New Matter, among other defenses, the defendants claimed that the decedents were also negligent. Thus, the jury was charged with proportioning the relative liability of each of these actors in accordance with our law on comparative negligence. ***See*** 42 Pa.C.S.A. § 7102. The jury concluded that the decedents were 100% at fault. Because the comparative fault of the decedents was an appropriate jury question for Outdoorsmen, Inc., I agree with the Majority that no relief is due with respect to this claim.

In sum, a criminal conviction for voluntary manslaughter does not establish a civil claim for negligence; it establishes a civil claim for the intentional tort of battery. Thus, Lloyd's criminal conviction for this crime had no effect on the Estates' civil claims for negligence. Therefore, I agree that

---

inflict harm upon the plaintiff, there is a difference, not merely in degree but in the kind of fault; and the defense never has been extended to such intentional torts. Thus, it is no defense to assault and battery." Prosser, THE LAW OF TORTS § 65 at 426 (4th ed. 1971).

the trial court did not err by failing to instruct the jury that Lloyd was negligent, as a matter of law.

Additionally, the law of comparative negligence does not apply to intentional torts. As such, the acts of the decedents were not relevant to determining Lloyd's liability for his intentional acts. However, any error in this regard was harmless, because the Estates did not allege a cause of action for battery against Lloyd. By contrast, comparative negligence does apply when all the actors are alleged to have acted carelessly. Thus, the jury appropriately compared the negligence of the decedents with Outdoorsmen, Inc., when it concluded the decedents were 100% at fault.

Because the verdict in this case is sound based on the causes of action that the Estates raised in their complaints, I agree with the Majority that no appellate relief is due on the Estates' first two appellate issues.